1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF MARYLAND

3

KIMBERLY P. GORDON,                    )
4                                      )
              Plaintiff,               )
5                                      )
          vs.                          ) CASE NUMBER 8:16-CV-00238-RWT
6                                      )
CIGNA CORPORATION, et al.,             )
7                                      )
              Defendants.              )
8    _____ )

9

          TRANSCRIPT OF PROCEEDINGS - MOTIONS HEARING
10             BEFORE THE HONORABLE ROGER W. TITUS
             THURSDAY, JULY 28, 2016; 10:40 A.M.
11                   GREENBELT, MARYLAND

12   FOR THE PLAINTIFF:
          Jonathan K. Tycko, Esquire
13        TYCKO AND ZAVAREEI, LLP
          1828 L Street, N.W., Suite 1000
14        Washington, DC  20036

15        James C. Shah, Esquire
          SHEPHERD, FINKELMAN, MILLER AND SHAH, LLP
16        35 E. State Street
          Media, PA  19063
17
FOR THE DEFENDANTS CIGNA CORPORATION AND LIFE INSURANCE
18   COMPANY OF NORTH AMERICA:
          Christopher J. Boran, Esquire
19        MORGAN, LEWIS AND BOCKIUS, LLP
          77 W. Wacker, Fifth Floor
20        Chicago, IL  60601

21        Proceedings recorded by mechanical stenography, transcript
     produced by computer.
22

23   _____

                    CINDY S. DAVIS, RPR
24             FEDERAL OFFICIAL COURT REPORTER
             6500 CHERRYWOOD LANE, SUITE 200
25                  GREENBELT, MD  20770

| | |
|---|---|
| 1 | **FOR THE DEFENDANT CIGNA CORPORATION AND LIFE INSURANCE COMPANY OF NORTH AMERICA (continued):** |
| 2 | Jeremy P. Blumenfeld, Esquire |
| | MORGAN, LEWIS AND BOCKIUS, LLP |
| 3 | 1701 Market Street |
| | Philadelphia, PA  19103 |
| 4 | |
| | Stuart A. Berman, Esquire |
| 5 | LONDON AND MEAD |
| | 1225 19th Street, N.W., Suite 320 |
| 6 | Washington, DC  20036 |
| 7 | **FOR THE DEFENDANT UCG HOLDINGS, LLP:** |
| | Stephen M. Cornelius, Esquire |
| 8 | ECCLESTON AND WOLF, PC |
| | 7240 Parkway Drive, Fourth Floor |
| 9 | Hanover, MD  21076 |

1                        I N D E X

2                                              P A G E

3    MOTION FOR SUMMARY JUDGMENT

4    Argument by Mr. Boran (Defendant Cigna/LINA)          5

5    Argument by Mr. Shah (Plaintiff)                      17

6    Rebuttal Argument by Mr. Boran (Defendant Cigna/LINA)  33

7    The Court's Ruling                                    35

8    MOTION FOR CLASS ACTION CERTIFICATION

9    Argument by Mr. Cornelius (Defendant UCG and OPIS)    41

10   Argument by Mr. Tycko (Plaintiff)                     45

11   Rebuttal Argument by Mr. Cornelius (Defendant UCG and OPIS  49

12   The Court's Ruling                                    50

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     P R O C E E D I N G S

2          (Call to order of the court.)

3          THE COURTROOM DEPUTY:   The matter now pending before

4  this Court is civil action number RWT-16-238, Kimberly Gordon

5  versus Cigna Corporation, et al.   The matter is now before this

6  Court for a motions hearing.

7          Counsel, please identify yourselves for the record,

8  please.

9          MR. TYCKO:   Good morning, Your Honor.   For the

10  plaintiffs, Jonathan Tycko with Tycko and Zavareei, LLP.   Anna

11  Haac from my firm is sitting two seats to my right, and

12  directly to my right is James Shah with the firm of Shepherd,

13  Finkelman, Miller, and Shah.

14          THE COURT:   Good morning.

15          MR. SHAH:   Good morning, Your Honor.

16          MR. BORAN:   Good morning, Your Honor.   Chris Boran.

17  I'm here on behalf of two of the defendants, Life Insurance

18  Company of North America, who I'll probably refer to as LINA

19  today, and Cigna Corporation.   To my left is Jeremy Blumenfeld.

20  We are both with the firm of Morgan Lewis.   And to his left is

21  Stuart Berman.

22          THE COURT:   Good morning.

23          MR. BERMAN:   Good morning.

24          MR. CORNELIUS:   Good morning, Your Honor.   Steve

25  Cornelius here on behalf of the other two defendants, UCG

1  Holdings and Oil Price Information Services.

2  **MOTION FOR SUMMARY JUDGMENT**

3        THE COURT:  All right, we're here on two motions

4  today.  I'd like to first hear the motion for summary judgment.

5  So you may proceed, sir.

6        MR. BORAN:  Good morning.  Should I stand here, Your

7  Honor?

8        THE COURT:  You can do so, but you'll need to get

9  near the mic.  I may not be able to hear you.

10       **ARGUMENT BY MR BORAN FOR DEFENDANTS CIGNA AND LINA**

11       MR. BORAN:  May it please the Court.  Your Honor, we

12  believe summary judgment is warranted here as to LINA and Cigna

13  because neither of those two defendants was an ERISA fiduciary

14  with respect to the particular conduct underlying the breaches

15  alleged in Count One of the complaint.

16       We also believe that judgment is appropriate with respect

17  to those defendants on Count Two because the record shows that

18  they had no involvement in or knowledge of the errors that led

19  to Mr. Gordon paying excess premiums for the plan at issue in

20  this case.

21       Your Honor, the case has been pending for about seven

22  months now.  The complaint was filed in January, and there are

23  broad class allegations in the complaint that we have denied in

24  the answer, and we think at the heart of this case is a very

25  individualized dispute involving a single former participant

1   and a beneficiary under a plan, and that the facts are

2   relatively straightforward, Your Honor.

3        At issue here is a life insurance plan that was sponsored

4   by UCG for the benefit of its employees and the employees of

5   its subsidiaries; that UCG fully self-administered the plan at

6   issue in this case, and where LINA came into the picture, Your

7   Honor, is it provided the insurance policy that underlied the

8   plan, and it served in a limited role as a claims fiduciary for

9   purposes of reviewing and adjudicating claims submitted under

10  the plan.

11       The plan had two forms of benefits, basic life insurance,

12  which the employer paid for, UCG, for $50,000.  It also had

13  voluntary life insurance, and that's what's at issue in this

14  motion and it's what's at issue in this case.  And there were

15  two components to that.  There was the guaranteed issue amount

16  of $100,000 that employees could elect without submitting any

17  sort of evidence of good health.  To the extent they wanted

18  coverage above $100,000, the plan made very clear that they

19  needed to submit evidence of good health in order to be

20  approved for that coverage, and the coverage would not be

21  effective until they were approved.

22       Your Honor, the plaintiff, her former husband, now

23  deceased, Mr. Gordon, was an employee for about seven months

24  back in 2013.  He was employed by OPIS, which is a subsidiary

25  of UCG.  During that time he enrolled in the plan.  He was

1  terminated later in the year, of October of 2013. He passed

2  away in January of 2014, and a few months later or several

3  months later, Ms. Gordon submitted a claim for benefits.

4      That's the first time LINA learned about Mr. Gordon's

5  circumstances, pursuant to its adjudication of his claim. What

6  it learned through the documents that it requested and received

7  from UCG is that Mr. Gordon, when he enrolled in the plan back

8  in May of 2013, he had requested $250,000 in voluntary

9  coverage.

10     What it also learned is that he had never submitted an

11 evidence-of-insurability application, and so it denied

12 Ms. Gordon's claim to the extent it sought coverage above the

13 $100,000 guaranteed issue set forth in the plan.

14     And it also learned at that time, for the first time,

15 that Mr. Gordon, during the six months he paid premiums, those

16 premiums were charged for coverage that he was not approved,

17 contrary to the plan administration manual that UCG was to

18 adhere to.

19     Your Honor, this suit obviously followed. In Count One,

20 the theory is that all of the defendants, the employer

21 defendants, UCG and OPIS, and the insurance company defendant

22 LINA and its parent holding company, Cigna Corporation, all

23 breached fiduciary duties under ERISA insofar as Mr. Gordon

24 wasn't notified of the evidence-of-insurability requirement

25 under the plan and insofar as he was allowed to pay premiums

1   for coverage he was never approved for.

2        So the first question we have to ask, that the case law

3   teaches us, is was LINA and Cigna a fiduciary with fiduciary

4   responsibilities over the conduct at issue here.

5        Your Honor, ERISA is not -- ERISA's fiduciary standard is

6   not an all-or-nothing concept.  One is a fiduciary only to the

7   extent they are engaged in fiduciary activity.  And what case

8   after case tells us, from the *Coleman* decision, which is cited

9   in our brief, to the *Lewis* decision, also cited in our brief,

10  to the *Van Loo* decision, also cited in our brief, is that the

11  primary documents to look at to see who is a fiduciary and who

12  isn't are the plan documents.

13       There isn't any dispute here that the plan documents make

14  it very clear that UCG was the plan administrator with

15  responsibility for all aspects of plan administration.  That

16  meant that UCG was responsible for processing enrollment

17  applications and correctly enrolling folks in the plan; for

18  notifying them of the evidence-of-insurability requirement,

19  that Mr. Gordon didn't satisfy here; and for correctly

20  calculating and collecting premiums on their behalf and

21  deducting those from their payroll.

22       On the other hand, LINA's role, as I mentioned before,

23  was very limited.  It merely served as the claim fiduciary.

24  What that meant is it didn't have any information about the

25  participants, including Mr. Gordon, unless and until a claim

1   was filed.  So what that means is that LINA simply wasn't

2   involved in the facts that led to Mr. Gordon being charged for

3   coverage that he was never approved.

4        Your Honor, I mentioned the *Coleman* case.  That's a

5   Fourth Circuit decision holding that an insurance company, that

6   was merely the claims adjudicator under a plan, was not

7   responsible for notifying participants that their coverage was

8   no longer enforced because the employer had stopped paying

9   premiums.  It was the employer who was the fiduciary

10  responsible for that activity.

11       Your Honor, we also cited to the *Lewis* case, which is a

12  very, very similar factual scenario and involved both LINA and

13  Cigna as defendants.  In that case the employee, likewise, had

14  been allowed to enroll in coverage that he wasn't actually

15  eligible for.  When his beneficiary's claim was later denied,

16  the Court looked at the circumstances, recognized that it was

17  the employer who was responsible for the enrollment process and

18  calculating and deducting premiums and remitting them to LINA,

19  and it could very well be held responsible for those

20  activities.  But as the Court explained, the Eastern District

21  of Virginia explained, LINA simply wasn't responsible for those

22  activities.  It adjudicated claims, and so it didn't have this

23  obligation to ascertain the enrollment list to determine who

24  was enrolled and whether they were enrolled properly and to

25  alert anybody if they weren't enrolled properly.  That's a

1  decision that was in favor of LINA and Cigna.  That's a

2  decision that was affirmed by the Fourth Circuit.

3        THE COURT:  What about the plaintiff's contention

4  that LINA had cheerfully received and had use of the enhanced

5  premium for the additional level of insurance that he wanted

6  and, therefore, had, as a result, fiduciary duties and a duty

7  to advise him that, hey, this coverage is not in effect?  What

8  about that?

9        MR. BORAN:  Your Honor, essentially, what the

10  plaintiffs have argued is that once a life insurance company

11  receives a premium payment, they can see that the premiums

12  themselves are not plan assets in the insurance company's hands

13  unless there's an excess payment in there.  If there's that

14  excess payment, then the insurance company becomes a fiduciary

15  with respect to that excess payment.  Your Honor, there is not

16  any case law that supports that proposition.

17     To the contrary, the Fourth Circuit, in the *Moon versus*

18  *BWX* case, addressed a very similar argument, and what the court

19  held is that merely accepting and retaining premiums for

20  coverage that the participant is not eligible for does not

21  trigger fiduciary responsibility.

22     I think the facts in that case are very telling because,

23  there, the employee had enrolled for life insurance coverage,

24  he terminated his employment, and he continued to pay the

25  premiums to the employer, and the employer should have known

1  coverage wasn't available, certainly knew the premiums were

2  coming in and kept those premiums.  In fact, by the time they

3  were up before the Fourth Circuit arguing, the employer still

4  had the premiums.

5       Your Honor, what that case held is merely collecting

6  those premiums doesn't trigger a fiduciary responsibility,

7  particularly when the recipient is not the designated plan

8  administrator.

9       To contrast our circumstances here and show why *Moon*

10  should apply with even greater force here is the fact that this

11  is an individual who paid premiums for about six months.  As

12  we've seen from the documents attached to plaintiff's

13  opposition, he made about $179 a month to much.  And as we've

14  seen also from the documents attached to the opposition, UCG

15  has made clear that it was responsible for those errors.  He

16  paid $179 too much not just because of the excess coverage

17  issue, but also because they misapprehended his date of birth.

18       What LINA receives when it receives premiums is not a

19  detailed list of the employees and what they're being charged

20  and what their coverage is and what their status is.  They get

21  a single payment which represents the full premium for both the

22  basic coverage that the employer pays for and the voluntary

23  coverage that the employees are paying for, and it receives no

24  specific employee information.  That too is confirmed not only

25  by the plan documents, but by the exhibit C attached to

1   Mr. Tycko's declaration, which was submitted in opposition to

2   summary judgment.

3        So we have a Fourth Circuit decision holding that the

4   acceptance of premiums doesn't trigger fiduciary duties, and we

5   have facts demonstrating that here there is no basis in the

6   record for concluding that LINA had any idea, until a claim was

7   filed, that these premiums had been submitted.

8             THE COURT:  You didn't separately brief this, but I'm

9   curious as to why Cigna is in this case.  Cigna is a parent, is

10  it not?  The parent of a whole group of insurance companies

11  under it.  But it is a separate company from LINA, isn't it?

12            MR. BORAN:  Correct.  It's curious to us why they've

13  been named as a defendant too.

14            THE COURT:  I mean, it's sort of like if I buy a

15  Cadillac, it's going to have somewhere in the papers it's a

16  quality GM product.  But GM has separate companies for Cadillac

17  and Chevrolet and so forth.  Isn't that the situation here for

18  Cigna?

19            MR. BORAN:  Yes.  Yes, Your Honor.  And you'll see it

20  can be a little confusing at first blush because you'll see the

21  word Cigna on various documents here.

22            THE COURT:  Right.  Like you're going to see GM on

23  the Chevrolet manual too.

24            MR. BORAN:  Exactly.  And those documents that say

25  Cigna on them, if you read at the bottom, in the footer, it

1   explains that Cigna is a registered mark, and that it's

2   licensed to the companies it does business, such as LINA.

3        So we don't think -- and we have briefly addressed this

4   in our opening brief -- that Cigna is an appropriate defendant

5   here because, for one, they're not an insurance company.  Two,

6   they're just a holding company, parent, two steps removed from

7   LINA, and their conduct is not at all at issue in this case.

8        Returning for a moment, Your Honor, back to the question

9   you had raised.  I also want to point out the *Coleman* case

10  which I've mentioned several times now.  The Fourth Circuit

11  recognized that ERISA's fiduciary rules are not supposed to

12  work in a way that blindsides insurance companies.

13       So we have to consider the practical implications of what

14  the plaintiff's theory suggests.  They're suggesting that when

15  there's a designated plan fiduciary who, admittedly, has

16  responsibility for accurately, correctly calculating and

17  collecting premiums from its employees and submits those as a

18  bulk premium payment to the insurance company, under

19  plaintiff's theory, the insurance company simply can't depend

20  on that; they can't rely on them.  Because if the responsible

21  fiduciary messes up, that automatically transforms LINA into a

22  fiduciary, under plaintiff's view.  That's exactly the kind of

23  blindsiding that *Coleman* was talking about.

24       And we want to emphasize here that it's not a

25  circumstance where Ms. Gordon is completely out of luck and

1    there's nobody left holding the bag on this issue.   UCG has

2    candidly acknowledged the errors that existed in this process

3    through the exhibit C document I've talked about.

4            And all of the cases I've talked about today -- the

5    *Coleman* case, the *Lewis* case, the *Van Loo* case -- which

6    involved virtually identical circumstances, what the courts

7    determined in those cases is the insurance company that was

8    merely the claims adjudicator, they weren't the responsible

9    fiduciary for the errors that happened.   On the other hand, the

10   employer, who was the plan administrator and was responsible

11   for those activities, that was a different story.

12           So we want to emphasize that this isn't a circumstance

13   where we're suggesting that LINA is able to enjoy premiums and

14   nobody can ever be held to account for this.   The fact is that

15   there is a responsible fiduciary.   That fiduciary has already

16   tried to remit the premium payments in this case, it happened

17   over a year ago and, instead, we're litigating it.   But, Your

18   Honor, we would submit that the mere acceptance of premium

19   payments didn't trigger any fiduciary responsibilities.

20           We would also submit that the plan documents make it

21   crystal clear that LINA simply wasn't responsible for those

22   activities or for the activities that gave rise to the breach

23   alleged in Count One.   And we think the documents reflecting

24   LINA's adjudication of the claim, we think the testimony of

25   Jodi Morehead, who explains that we only first learned of the

1   premium overpayments after Mr. Gordon submitted a claim, all of

2   that evidence -- and the exhibit C document I've mentioned

3   several times, all of that is evidence that reenforces the

4   distinct delegation of responsibility at issue in this plan and

5   demonstrates that UCG was the responsible party for purposes of

6   administration, and LINA's only role was to adjudicate claims

7   when they came in.  And in fact, that's the first time LINA

8   learned anything of Mr. Gordon's circumstances.

9        For all those reasons, Your Honor, we think Count One is

10  appropriately dismissed at this time because the defendants

11  simply aren't fiduciaries.

12           THE COURT:  All right.  Let me hear from the

13  plaintiff.

14           MR. BORAN:  Your Honor, would you like me to address

15  Count Two or should I --

16           THE COURT:  Yeah, go ahead.  I'm sorry, I thought you

17  were finished.

18           MR. BORAN:  With respect to Count Two, this is an

19  alternative theory that the plaintiffs are asserting.  It

20  presupposes that neither LINA nor Cigna are fiduciaries, and

21  what it's alleging is that even though they're not fiduciaries

22  under ERISA, they can still be held liable to the extent they

23  knowingly participated in another fiduciary's breach.

24       So first, right off the bat -- and this has been

25  briefed -- the Fourth Circuit and no case that I'm aware of

1   within the Fourth Circuit has recognized this particular cause

2   of action.

3          There is a Supreme Court decision that recognizes a

4   different -- very similar but different theory when you have a

5   situation where, under Section 406 of ERISA, a fiduciary has

6   engaged in bilateral prohibited transaction with a party in

7   interest.  Those are both defined entities under ERISA.  When

8   that happens, the Supreme Court has recognized, in the *Harris*

9   *Trust versus Salomon Smith Barney* case, that a claim may be

10  brought against that party in interest for restitution of any

11  plan assets that it received as a result of the prohibited

12  transaction.

13         That, obviously, is not the claim alleged in this case,

14  and the courts, Your Honor, have been loathe to expand ERISA's

15  umbrella to recognize new claims that aren't set forth in this

16  very, very detailed statute, and we would urge the Court to

17  align with the Third Circuit, which has squarely rejected the

18  notion that a nonfiduciary can be held liable for any other

19  fiduciary's breach of the general duties set forth in ERISA.

20         But even if the Court were to indulge that theory, the

21  evidence that I've already talked about demonstrates that LINA

22  simply didn't know about the circumstances concerning

23  Mr. Gordon until a claim was filed, and that forecloses any

24  theory that it knowingly participated in the breaches alleged

25  against UCG.

1          THE COURT:  Okay.  Now let me hear from the

2    plaintiff.

3          MR. BORAN:  Thank you, Your Honor.

4          THE COURT:  I jumped the gun, excuse me.

5       By the way, I apologize, counsel, that we started a

6    little late.  We had a sentencing that went over time.

7              **ARGUMENT BY MR. SHAH ON BEHALF OF THE PLAINTIFF**

8          MR. SHAH:  Good morning, Your Honor.  James Shah on

9    behalf of the plaintiff, and I'll be addressing this particular

10   motion.

11       As a starting point, I think that *Coleman* and the other

12   cases, with respect to a determination as to who is a fiduciary

13   under ERISA, made clear that the plan documents are a starting

14   point but not an ending point.  It's well settled that it's the

15   actual conduct that's at issue, and that whether one is deemed

16   a fiduciary under ERISA or not is a functional test.

17       With respect to Count One, I think there's two

18   independent reasons lie here, certainly at a summary judgment

19   stage, in the absence of any discovery, and I'll get to that at

20   the end.  There are genuine issues of material fact regarding

21   whether or not the Cigna entities were fiduciaries under the

22   circumstances --

23          THE COURT:  That's a legal conclusion.  Tell me what

24   factual disputes there are with respect to the LINA defendants.

25          MR. SHAH:  Sure, Your Honor.  Well, in the --

1        THE COURT:  To say somebody is a fiduciary is a

2   conclusion.  I need to know what are the facts that you are

3   saying are in dispute that would cause a court not to be able

4   to make a conclusion as to fiduciary status.

5        MR. SHAH:  Right.  Well, first and foremost, with

6   respect to the argument that we have made that the unapplied or

7   excess premiums are plan assets, as opposed to compensation

8   that give rise to the fiduciary duty, there has been no

9   discovery as to how those additional premiums were handled or

10  treated by the Cigna defendants.  There's been no --

11       THE COURT:  Why, based on Fourth Circuit decisions,

12  would that be a factor that would be important in this case?

13       MR. SHAH:  Well, each of the cases that are cited do

14  stand for the proposition that premiums that are received are

15  compensation.  But in none of those cases, *Moon*, in *Van Loo*, in

16  *Rainey,* in *Lewis,* did the Courts there -- were they faced with

17  the argument that plaintiff here is putting forward, and that

18  is with respect to the treatment of the unapplied premiums, the

19  excess premiums, do those constitute plan assets.

20       THE COURT:  Well, here, the insurer, LINA, has

21  submitted an affidavit that is not disputed, to my knowledge,

22  that indicates that they did not know that they were getting

23  excess premiums.  All they knew is they got a lump sum of money

24  and, somewhere along the line, the employer in this case made a

25  mistake and collected premiums that they shouldn't have,

1   because additional insurance had not been issued because

2   evidence of insurability had not been submitted.

3        I don't understand your position then.  I mean, they get

4   a big check from the employer, and it doesn't say, by the way,

5   we collected X dollars for Mr. Jones, who elected additional

6   coverage.

7             MR. SHAH:  Well, as to that point, I think, one, the

8   law is clear that plaintiff should be entitled to discovery to

9   test those representations.  Two, we know from the record --

10            THE COURT:  Well, how have you contested them on the

11   record before me?

12            MR. SHAH:  Well, what we've said very specifically is

13   that we believe that this shouldn't be decided until we have an

14   opportunity to have discovery to test those issues.

15        And by way example, we've referenced in one of the

16   letters regarding Mr. Gordon's coverage which indicates the

17   name of a Mr. Hungerford in a form letter, which clearly

18   indicates that Mr. Gordon was not the first person that the

19   defendant encountered where they were collecting excess or

20   unapplied premiums --

21            THE COURT:  Well, so what that it's not the first

22   time that it happened?  I mean, people take old documents and

23   forget to change the names and send them out, but that does not

24   mean it's happening all the time.

25            MR. SHAH:  Well, it speaks to the knowledge aspect,

1   which speaks to the alternative count, and I certainly want to

2   get to that.  But it also speaks to Cigna's knowledge of the

3   intake of assets that were not tethered to policy payouts --

4          THE COURT:  All that speaks to is that at some time

5   in the past, somebody at LINA sent a similar letter with

6   respect to somebody else.  How does that reflect what knowledge

7   LINA had in this case, of this decedent's premium being

8   collected?

9          MR. SHAH:  Well, it speaks to an open issue as to how

10  LINA was handling those unremitted funds, which, as our

11  briefing makes clear in the *Perez versus Geopharma* case, the

12  *Perez versus Ulery* case, where those courts hold that there is

13  an exercise of authority and control over plan assets where

14  certain premiums were not remitted to pay claims.

15      So I think that, again, to point out *Moon* and the other

16  cases relied upon by defendants do not address the issue with

17  respect to unremitted payments that aren't going to policy

18  coverage, does the handling of those, those funds, which become

19  plan assets by virtue of the fact they're unremitted, does that

20  trigger fiduciary duty?

21      In fact, we think that the cases make clear that as they

22  become plan assets, which they do in this circumstance, that

23  they do give rise to fiduciary duty.  They don't just have

24  discretionary authority over those funds.  They have complete

25  control and authority over those funds.  And so, again, the

1  case law does not address that specific argument.

2      Also, I would note --

3          THE COURT:  Well, maybe that specific argument wasn't

4  made, but in multiple cases in the Fourth Circuit, it was not

5  of any moment that there had been an improperly collected -- by

6  the employer and remitted to the insurer -- payment.

7          MR. SHAH:  There's no question that that was a

8  predicate fact in those cases.  But there's also no question

9  that it was not raised in this context.

10     I would also point out from a discovery standpoint, just

11  from an actuarial standpoint, I find it difficult to believe

12  that a for-profit company, which has a lot of regulatory

13  reporting requirements, is taking in funds, premiums, and

14  doesn't know what the coverage is, what the amounts

15  attributable to the coverage are and, in fact, it seems to run

16  counter to --

17         THE COURT:  Well, they know, with respect to the

18  other forms of coverage, that they're insuring a person for X

19  dollars or X multiples of his annual earnings unless it goes

20  above the threshold that requires evidence of insurability,

21  don't they?  But they don't get a list of the payroll, do they?

22     This is a group type of policy that's issued, and that

23  we're going to insure your employees for these benefits in

24  consideration of these premiums that you are supposed to

25  collect in your administration of the plan.  But that does not

1    mean that the insurance company, in turn, is maintaining a

2    separate record for each and every individual employee.  They

3    have this bulk billing and bulk payment system, don't they?

4              MR. SHAH:  Well, I point the Court to exhibit 3 of

5    the Morehead declaration, docket 34-6, which is the Cigna

6    administration manual.  And in addition, on page 1, to saying

7    that "the manual is designed to serve as a guide to your role

8    in helping us administer your group insurance plans," on page

9    18 of that document, under guidelines, it talks about the Cigna

10   processing team timeline, and it states "once Cigna receives

11   the completed evidence of insurability form, the processing

12   team will review the form to determine if medical underwriting

13   is required.  Depending on the amount of coverage requested and

14   the answers to the medical questions, the Cigna processing team

15   will either," and then it enumerates the following, "one,

16   approve the request for coverage; two, contact the client

17   representative to obtain missing information from the employer;

18   and/or three, send a letter to the applicant to obtain missing

19   personal data or answers to incomplete medical questions; four,

20   send to the underwriting team for further evaluation based on

21   medical conditions, amount requested."

22        So at a minimum, this suggests, certainly in the absence

23   of any type of discovery in this case, that if they are stating

24   that one of the things that they might do is communicate

25   directly with the insured, that there is more recordkeeping and

1  more data that is within the defendant's grasp and purview than

2  simply nondescript receipt of minimal information from UCG.

3      So just to close on this first notion.  Unremitted

4  premiums under the law that is cited -- the *Perez* cases, the

5  *Arevalo* case and the *Phelps* case, which the Court has -- state

6  that unremitted premiums become plan assets, and those plan

7  assets are such that, because they're not tethered to a policy

8  at that point, become assets which are within the -- the

9  disposition of which are within the control and authority of

10  the Cigna defendants.

11      Secondarily, under Section 321 of ERISA, it also provides

12  for fiduciary status where there's discretionary control or

13  authority respecting the management of the plan or the

14  administration of the plan.

15      And in the briefing, again, in the absence of discovery,

16  plaintiff has pointed to a number of documents which certainly

17  suggest that there is a genuine issue of material fact as to

18  whether or not the manner in which the defendants were acting,

19  the Cigna defendants were acting, vis-a-vis the policy at issue

20  here, constituted conduct which rose to the level of giving

21  rise to fiduciary responsibilities.

22      In addition to the excerpts from the manual that I just

23  read into the record, exhibit 9 to the Morehead declaration is

24  an enrollment guide, which specifically --

25          THE COURT:  Tell me where you're referring to so I

1   can --

2          MR. SHAH:  I'm sorry, Your Honor.  It's document

3   34-12.

4          THE COURT:  Okay.

5          MR. SHAH:  And on -- well, from the docket on page 15

6   of 21 of that document.

7          THE COURT:  Fifteen of 21?  Okay.

8          MR. SHAH:  It talks about the supplemental life

9   insurance at issue here and directs individuals with questions

10  to contact Cigna.  So you have Cigna, in a manual, saying this

11  is information that will serve as a guide to your role in

12  helping us, being the Cigna defendants, administer your group

13  insurance plans.

14       You have Cigna taking on the responsibility in that same

15  document -- or at least appearing to take on responsibility in

16  that same document of not just limiting its role to claims

17  determination but, very clearly, to functions which pertain to

18  initial eligibility determinations, trying to assure that

19  information is correct on the front end of the transaction, not

20  just making an assessment on the back end as to whether or not

21  coverage is appropriate.

22       So if they're taking on certain of those activities, do

23  those certain activities also include providing information

24  about the requirements of an evidence-of-insurability form?

25  What did they do in that respect?  Discovery will determine

1   that.

2       Your Honor, moving on to the -- as counsel described it

3   as the alternative count, knowing participation in a fiduciary

4   breach.  That simply is a cause of action that says a

5   nonfiduciary, who knowingly participated in an ERISA

6   fiduciary's breach of duty, is jointly and severally liable

7   with the fiduciary under ERISA.

8       We point to the *Phones Plus versus Hartford* case out of

9   the District of Connecticut, which references the Second

10  Circuit in *Diduck*, D-i-d-u-c-k, which finds that such a cause

11  of action is viable.  Counsel is correct about the Third

12  Circuit having a differing view.

13      With respect to this circuit, plaintiff points the Court

14  to *Pension Benefit Guaranty Corporation versus Ross*, 733

15  F.Supp. 1005 out of the Middle District of North Carolina,

16  where the court, in detail, takes a look at whether or not the

17  Fourth Circuit would adopt a knowing participation cause of

18  action and finds that such an action is cognizable and talks

19  about, in detail, how general precepts of trust law are rooted

20  in ERISA -- or found in ERISA and points to Supreme Court

21  precedent on that, and then concludes in that case that there

22  is a claim for knowing participation.

23      Now, what are the elements?  There are three.  Breach by

24  a fiduciary of a duty owed to plaintiff.  So here, even if the

25  Court were to find, ultimately, that the Cigna defendants

1  weren't fiduciaries in this aspect, it would still be our

2  contention that the employer breached a duty to plaintiff.

3        So the second element is defendant's knowing

4  participation in the breach.  So here's where the Hungerford

5  correspondence is key.

6        Again, even on this limited record, it is clear that the

7  Cigna defendants were aware, from prior conduct and prior

8  interaction with an insured, a different one than Mr. Gordon,

9  that there were circumstances by which -- and in that case for

10 15 years, as opposed to just the seven months with

11 Mr. Gordon -- the Cigna defendants were receiving --

12        THE COURT:  How does that show knowledge of the

13 employer fiduciary's breach by Cigna in this case?  How does it

14 show that?

15       All you're telling me is that somewhere along the line in

16 the history of Cigna, some other employer goofed up the

17 handling of supplemental insurance, as is alleged in this case.

18 But how does that show the knowing participation by the Cigna

19 defendants in the breach by the employer of its fiduciary duty

20 in this case?  Simply the fact that it happens somewhere in the

21 past with some other employer, how does that show that?

22        MR. SHAH:  Because it shows that Cigna, even if one

23 accepts that it was acting in a limited fiduciary capacity as

24 it relates to group employer plans, knew, knew at least in one

25 additional instance -- and I would bet that there are a lot of

1   others out there if we get discovery that predate Mr. Gordon --

2   they knew that in that context there was at least one instance

3   where they were receiving funds that were unapplied and that

4   were in excess.

5        So the question is what did Cigna do about it?  What

6   policies and procedures did it put in place to ensure that

7   there were no further breaches of fiduciary duty, even if it

8   was on an employer's side.

9        The Cigna entities know that they were in the business of

10  accepting these types of premiums of compensation.  And they

11  knew in that instance that they were accepting them for a

12  period of 15 years.

13       So what is it that they did?  What is it that they did

14  with respect -- vis-a-vis the Cigna defendants' relationship

15  with employers and/or with respect to the manner in which the

16  Cigna defendants handled these types of premiums themselves?

17       But even, again, on the limited record, they were aware

18  that in this same type of circumstance, this not only could

19  occur, but was, in fact, occurring.

20       So I think, certainly, again --

21       THE COURT:  You're really sort of trying to

22  articulate a standard of care for insurers.  If you know

23  something like this has happened before, you need to put in

24  place procedures to make sure it never happens again.  And

25  that's your theory that would mean if it's happened with

1   Mr. Jones, it might happen with Mr. Smith; and therefore, if it

2   happens with Mr. Smith, that fact that it happened with

3   Mr. Jones puts you on notice, and you need to put procedures in

4   place and so forth.  That would require a significant change in

5   the way they handle the bulk premiums that come in; would it

6   not?

7              MR. SHAH:  Well, I would say even independent of any

8   potential change in policy or procedure, just in this case

9   alone we're entitled to see what is it that the Cigna entities

10  knew and when did they know it with respect to the collection

11  of these specific premiums and the potential for knowledge that

12  they were receiving unaffiliated or additional premiums?

13       But I certainly think that it cannot be discounted, from

14  a legal perspective, that a fiduciary, even if it wasn't acting

15  in the fiduciary capacity here, knowing that it was receiving

16  these funds, would put into place and could be expected to put

17  into place procedures to ensure that that didn't occur.

18       So I'm happy to answer any questions, in addition, Your

19  Honor might have.

20       But again, we think we have two independent bases under

21  Section 321 to find, certainly, that there's a genuine issue of

22  material fact that the Cigna defendants were fiduciaries and,

23  also, on the alternative Count Two.

24       Lastly, but perhaps most importantly, a functional test

25  under ERISA looks at the actual conduct of the defendant.  What

1  role was it playing?  And we have --

2          THE COURT:  We start with the plan documents to look

3  at that.  You have to start with that, don't you?

4          MR. SHAH:  Absolutely agree, Your Honor.  But that's

5  a starting point, not an ending point.  In the *Coleman*

6  *Nationwide* case, it specifically says "while we find nothing in

7  the formal allocation of responsibilities to conclude that

8  Nationwide possessed the necessary discretionary authority to

9  render it a fiduciary, we must also look beyond the formalities

10 to see if Nationwide, in fact, exercised authority over these

11 sorts of notifications."

12      When a functional test is at issue, it is inappropriate

13 and prejudicial to a plaintiff to not be able to undertake the

14 necessary discovery to test, to demonstrate that functionality.

15 And there is --

16          THE COURT:  How have you disputed any of the

17 allegations contained in the affidavit submitted by the

18 insurance company in this case?  They've laid out exactly what

19 their role was.  They've given me the plan documents.  They

20 told us what they do in terms of the actual administration of

21 their function, as claims administration.  They've told me

22 exactly what they do with regard to premiums coming in.  What

23 more do I need?

24          MR. SHAH:  Well, plaintiff has had no opportunity to

25 test that.  And again, I hearken back just to the plan --

1          THE COURT:  Well, testing it, I need to know how you

2   set up a genuine issue of disputed fact -- I mean of a material

3   fact.

4          MR. SHAH:  Well, with respect to the plan

5   administration and management, again, just going back to the

6   manual, the manual, on its face, more than suggests; it seems

7   to state that there are activities on the front end with

8   respect to initial eligibility determinations --

9          THE COURT:  That's a role that they never fulfilled

10  in this case.

11         MR. SHAH:  Pardon?

12         THE COURT:  That's a role they never fulfilled in

13  this case, to determine whether the person was eligible for the

14  additional insurance, right?

15         MR. SHAH:  Well, the Cigna entities have said very

16  clearly that, under the plan, they had fiduciary

17  responsibilities with respect to claims determination on the

18  black end, but that the plan administration, with respect to

19  the front end and the eligibility determinations, fell entirely

20  on the employer.

21         THE COURT:  Well, you've got a bit of a hybrid

22  situation.  In terms of getting the enrollment forms and

23  signing them up and having them elect the basic coverage that

24  everybody is entitled to without evidence of insurability,

25  yeah, that's entirely the employer's allocation of

1   responsibilities, and I don't think anybody disputes that.

2       It's where you get to this additional level of insurance

3   that requires evidence of insurability that it's got to go to

4   the insurance company to say yes or no, we will or will not

5   take on that additional coverage risk, right?

6           MR. SHAH:  But we have Cigna talking about -- in the

7   absence of certain data, that Cigna has the ability to have

8   direct communication with an insured to try to ascertain --

9           THE COURT:  A person sends in and says, look, I

10  suffer from back disorders and so forth, and they've got to

11  make a decision whether this is an insurable risk or not.

12  What's the problem with that?

13          MR. SHAH:  Well, in terms of this evidence of

14  insurability discovery, Your Honor, where does that form come

15  from?  Who is it provided to?  How is it supposed to be

16  provided?  What role do the Cigna defendants play in that?

17  What role don't they play in that?

18          THE COURT:  That's factually irrelevant to this case.

19  We never got evidence of insurability in this case.  The form

20  was never filled out.  LINA never had the opportunity to do

21  anything in this case.  It may do it in some other case, but in

22  this particular case, they have a plan, the plan said here's

23  what the benefits are and how we handle it, but if you want to

24  have this additional higher level of insurance, evidence of

25  insurability has to be submitted to us, and we say yes or say

1   no.  They never got to that stage in this case.

2        So how is that potential role of what they might do in

3   the future in some other case germane to the issues before me

4   in this case?

5           MR. SHAH:  Well, I think the policies and procedures

6   speak to other cases, but they also speak to this case.  What

7   was the role that they played?  Where were their duties?  What

8   were their responsibilities.  Not what were they in the plan,

9   but what were they in actuality.

10          THE COURT:  Okay.

11          MR. SHAH:  And with respect to the other argument

12  under Section 321, regarding the plan assets and the excess

13  premiums, were those funds commingled?  Were they sweeping

14  those into an operating account and taking them as profit?

15  What were they doing with those funds?  How were they treating

16  those funds?  Those all speak very much to whether or not they

17  were plan assets, over which they had discretionary control and

18  authority or actual control and authority.

19       So as to every single issue here, whether it be how were

20  the excess premiums treated, what role did they plan in the

21  management administration as it relates to the claims, and what

22  level of knowledge did they have as it relates to Count Two,

23  all of these, through developed factual record through

24  discovery, very well could further demonstrate claims under

25  both Count One and Count Two, in addition to what's already

1    before the Court.

2         I appreciate very much the Court's time.

3              THE COURT:  All right.  Thank you.

4                **REBUTTAL ARGUMENT BY MR. BORAN**

5              **FOR DEFENDANTS CIGNA CORPORATION AND LINA**

6              MR. BORAN:  Thank you, Your Honor.  I have a few

7    points I'd like to make.  But first, are there any particular

8    questions you'd like me to focus on?

9              THE COURT:  Okay.

10             MR. BORAN:  First of all, with respect to the case

11   law and whether acceptance of premiums for coverage that

12   doesn't exist triggers fiduciary responsibility, that's the

13   *Moon* case.  That was the argument.  The defendant there was not

14   the designated plan administrator, and the argument being made

15   was that because this defendant accepted premiums for coverage

16   that did not exist, it became a fiduciary, and that argument

17   was rejected squarely by the Fourth Circuit.

18        With respect to the cases the plaintiffs do cite, we've

19   addressed those in our briefing, but they involve very

20   different circumstances, and the allegations are that an

21   employer took employee contributions and utilized them for some

22   purpose other than funding a plan.

23             THE COURT:  Other than paying claims.  That's the

24   *Perez* case.

25             MR. BORAN:  Correct, Your Honor.  There was a lot of

1   discussion about the administration manual, and I think you hit

2   the nail on the head, that as far as the EOI review process,

3   that's something that LINA does, and we haven't made any secret

4   about that.  But there's no dispute here that that process was

5   never invoked because Mr. Gordon never submitted the

6   application.

7          The only thing that I think is unclear from the record is

8   exactly why he didn't submit the application.  Did UCG not

9   provide it to him?  It was supposed to.  The manual, the letter

10  that UCG wrote makes it very clear that that's what they're

11  supposed to do.  Did he get it and not submit it?  We don't

12  know, but what is clear is that LINA was not involved in the

13  process.

14         In terms of the enrollment guide that was mentioned,

15  first, I would point out that that's the UCG enrollment guide

16  that they prepare.  The e-mail that is attached to plaintiff's

17  opposition shows that it was UCG who submitted -- who sent an

18  e-mail with that document and some other documents to

19  Mr. Gordon when he started employment, saying, Mr. Gordon, in a

20  few months you'll be able to enroll in a lot of benefits that

21  we offer; we have an online enrollment process; it's a portal;

22  it's called Ceridian Self-Service; and it reflected that this

23  is the plan administrator; they're responsible for those

24  activities.  That's not LINA sending the e-mail.  That's UCG

25  doing its job as the plan administrator.

1          By the way, in terms of Count Two, the Hungerford letter,

2    I think for the same reasons you've noted, doesn't demonstrate

3    any actual knowledge or knowing participation.

4          And the idea that -- first of all, let me say that having

5    a responsible fiduciary, whose job it is to take care of all

6    these administrative functions, that is a procedures that ought

7    to allow an insurance company to limit their role to claims

8    adjudication.  That benefits everybody because there's still a

9    responsible party, and what the insurance company is allowed to

10   do is provide benefits with premiums that are lower because it

11   doesn't have to take on the additional burden of if one

12   employer messed up, now we have to do some comprehensive audit

13   of all the thousands of employers who may have insurance,

14   notwithstanding the fact that there are fiduciaries whose job

15   it is to make sure those mistakes don't happen.

16         Again, it's unrefuted and undisputed that the Morehead

17   declaration establishes that LINA simply didn't know about the

18   errors that occurred, that UCG has candidly acknowledged, until

19   long after Mr. Gordon passed away and long after the six-month

20   period where there were excess premium payments.

21         So for all these reasons and those I discussed

22   originally, Your Honor, we would ask that the Court enter

23   judgment in favor of LINA and Cigna as to both Count One and

24   Count Two of the complaint.

25                          **THE COURT'S RULING**

1            THE COURT:  All right, I have before me today two

2    motions, and we'll address the second one shortly.  The first

3    is defendant Cigna Corporation and Life Insurance Company of

4    North America's motion for summary judgment, which is docket

5    entry 34.

6            The circumstances in this case are unfortunate.  They

7    relate to Stephen Gordon's employment by the other defendant,

8    Oil Price Information Services, who went to work for that

9    company, which had a plan of life insurance benefits that was

10   set up through the auspices of a Cigna subsidiary, Life

11   Insurance Company of North America.  The plan allocated

12   functions between the employer and the insurer, such that the

13   insurer, in addition to, obviously, providing insurance, its

14   role under the plan documents was indisputably that of claims

15   administration; whereas, the administrative role for enrollment

16   and getting people set up in the plan and so forth was placed

17   on the employer.

18           Under this particular plan, there were different levels

19   of coverage that could be elected.  Some were automatic

20   insurance without evidence of insurability, and if you got

21   above a certain level under the plan documents, evidence of

22   insurability, called in these documents EOI, was required to be

23   submitted to LINA before that level of coverage could be

24   submitted by the employer for the benefit of the employee.

25           There's no dispute in this case that the decedent elected

1  a higher level of coverage that required evidence of

2  insurability to be submitted.  There's no dispute that it

3  wasn't submitted.  That appears to be a slipup by the other

4  defendant in this case, Oil Price Information Services.  And

5  there's also no dispute that that employer, Oil Price

6  Information Services, collected the additional premium

7  applicable to the additional coverage and remitted it to LINA.

8        The plan documents are all attached to the papers in this

9  case and to the summary judgment motion.  It makes it very

10  clear what the allocation of responsibilities are that I've

11  already just reviewed.

12        It's also undisputed that the employer did what's called

13  self-billing.  They would remit to LINA, on some cyclical

14  basis, gross premiums for all employees, including,

15  intermingled with that, any additional premiums that would be

16  collected in connection with the higher level of coverage if

17  the person had successfully submitted the EOI.

18        The plaintiff, as a result of what took place in this

19  case, asserts two types of claims against the insurance company

20  defendants.

21        I find no basis for Cigna to be a defendant in this case.

22  It's a holding company.  It's not an insurer.  It didn't have

23  any role under the plan documents.  It is, as I pointed out

24  during oral argument, sort of like General Motors is to

25  Chevrolet; that it's the parent but it's not the car.  The car

1  that was bought was a Chevrolet, issued by Chevrolet, LLC, or

2  whatever GM uses for that division of its company.

3      I don't see any basis whatsoever for Cigna to be in this

4  case.  It licenses its mark and name to go on their various

5  products issued by their various companies controlled by it,

6  but I don't see any basis for Cigna to be in the case at all.

7      The real question is whether Life Insurance Company of

8  North America, the insurer under this plan and the claims

9  administrator, has any place being before the Court.

10      The complaint contains counts for breach of fiduciary

11  duty under ERISA, in Count One, and then a theory of

12  co-fiduciary breach in Count Two.

13      The plaintiff makes some ingenious arguments as to how to

14  hold Life Insurance Company of North America into this case,

15  primarily premised upon the idea that by its retention of a

16  premium that was being collected for insurance that was not

17  being provided, it had fiduciary duties with respect to that

18  that it breached, resulting in liability under ERISA.

19      I'm tempted, for sympathy reasons, to try to rule in

20  favor of the plaintiff, but sympathy is not how I make rulings.

21      The parties have all mentioned various cases in the

22  Fourth Circuit, and several, I think, are applicable to

23  disposition of the claim under Count One.

24      The *Coleman* case, authored by Judge Wilkinson, who always

25  has colorful and beautifully written language in his opinions,

1  rejected a claim very similar to this one in *Coleman versus*

2  *Nationwide Life Insurance Company*, and he observed that "there

3  appear to be three unrelated theories of recovery, but

4  acceptance of any of them would require the Court to rewrite

5  the contract of insurance.  While a Court should be hesitant to

6  depart from the written terms of a contract under any

7  circumstances, it is particularly inappropriate in a case

8  involving ERISA, which places great emphasis upon adherence to

9  the written provisions in an employee benefit plan."

10         There is nothing to suggest before this Court that

11  anything other than that was what was done in this case.  There

12  was a claim submitted to LINA in their role as claims

13  administrator.  They properly assessed it, denied it.  It was

14  upheld on appeal.  I find nothing that would be reviewable

15  under the traditional review standards for its determination on

16  that, and under the circumstances of this case, I find no

17  breach of fiduciary duty under ERISA that would be under Count

18  One.

19         The same can be said in the *Lewis* case from Eastern

20  District of Virginia.  Essentially, the same result was reached

21  in the *Moon versus BWX Technologies* case.

22         Those are the Fourth Circuit cases.

23         And then there's other cases that have the same type of

24  analysis, reaching the same type of conclusion, including *Van*

25  *Loo versus Cajun Operating Company*.

1          So with respect to Count One, I find that there is no

2    genuine issue as to any material fact; that the defendants, the

3    Cigna defendants are entitled to judgment as a matter of law.

4          I do not believe that this is a case in which a proper

5    case has been laid out for discovery under Rule 56(d).  Simply

6    being suspicious of the possibility that there may be some

7    facts out there that might support a claim is not a basis for

8    full-throated discovery in defense of a summary judgment motion

9    under 56(d).

10         The plaintiff suggests that because it appears that at

11   least one other person insured by the Cigna defendants or LINA

12   had had the same kind of a foul-up somehow indicates that they

13   should go on a fishing expedition, to look into all kinds of

14   other cases to see whether that's happened in other

15   circumstances, is not a sufficient basis to unleash the

16   full-throated furry of discovery in this case.  It's obvious

17   that this has happened in other cases with other companies, and

18   that's why we have some of the cases that are before me today.

19         So I simply find no basis for a 56(d) affidavit in this

20   case being sufficient to deny or defer consideration of the

21   motion.

22         On the second count, the co-fiduciary breach, the key to

23   that, if you're going to have a breach by a nonfiduciary for

24   the breach of a fiduciary, is your knowledge of that other

25   fiduciary's breach.  That's simply totally absent in this case;

1 that the unrefuted affidavits before me indicate that the first

2 time that LINA knew about the foul-up in collecting the

3 premiums inappropriately for this gentleman was when they got a

4 claim.  That's certainly not a basis for co-fiduciary breach

5 liability.

6      Accordingly, I will grant the motion with respect to

7 Count Two, as well, and enter judgment in favor of the Cigna

8 defendants, both of them, as a result of this motion.

9                **MOTION FOR CLASS ACTION CERTIFICATION**

10      THE COURT:  Now, let me hear from the defendant Oil

11 Price Information on your motion with respect to class action

12 certification.

13                **ARGUMENT BY MR. CORNELIUS**

14              **FOR DEFENDANT UCG HOLDINGS AND OPIS**

15      MR. CORNELIUS:  Good morning, Your Honor.  Steve

16 Cornelius on behalf of defendants UCG Holdings and OPIS.  Your

17 Honor, with your permission to keep my acronyms and

18 abbreviations short, could I just refer to my clients as UCG

19 and the Cigna/LINA defendants as Cigna since that's the way

20 it's done in the complaint?

21      THE COURT:  That's fine.

22      MR. CORNELIUS:  Okay.  Your Honor, we agree with the

23 initial point made by Cigna's counsel.  This is a very

24 individualized dispute.  We move preemptively, under Rule

25 321(c)(1)(A), to deny class certification based on the

1    pleadings alone as to the UCG defendants.

2         The basis for our motion is that the plaintiff, in her

3    complaint, has failed to plead sufficient facts of a prima

4    facie class action against UCG.  Rather, the allegations in the

5    complaint and the definition of the class as written are

6    focussed upon the life insurance companies, the Cigna and LINA

7    entities.  The complaint even starts out by stating "this case

8    is about an insurance company," and it goes from there, repeats

9    that theme throughout the case, and it's also what comprises

10   their definition of the class.

11        THE COURT:  Well, what if, after discovery, the

12   plaintiffs were to develop that your company and its parent

13   company UCG holdings had done this over and over and over

14   again, and the result was that a large number of employees'

15   decedents' estates were deprived of this additional death

16   benefit by the sloppy bookkeeping and so forth of the UCG

17   defendants, and that there really is a large number of people

18   who have been affected and have common and typical claims that

19   would justify class treatment, rather than everybody having to

20   sue individually?  If I don't know the numerosity in this case,

21   don't know the commonality, don't know the typicality, how can

22   I make a determination at this early stage?

23        MR. CORNELIUS:  Well, Your Honor, there are no facts

24   alleged in this complaint to suggest that there are such

25   additional persons involved in this type of circumstance.

1          THE COURT:  Well, then why would it not be

2    appropriate to defer any question of deciding whether this is

3    or could be a class action until I have information in front of

4    me that shows that?  Why should not the plaintiffs be able to

5    do some discovery in this case that would be able to determine

6    whether the slip-up in this case was a common occurrence taking

7    place on a large scale basis or whether it's an isolated

8    occurrence that simply would not be appropriate for class

9    relief?

10          MR. CORNELIUS:  Well, because, Your Honor, the way

11   this definition of the putative class is defined, there aren't

12   facts that can be developed to fit that framework, because this

13   definition includes employees beyond the scope of the UCG

14   employment, and it includes employees who, potentially, if they

15   exist, aren't in the same boat as the plaintiff.  You have

16   people, alleged within this definition, that they aren't the

17   beneficiary of a deceased employee or a covered individual.

18   You have employees who are still alive.  Those people,

19   obviously, you don't have the same evidence of insurability

20   issues, is there a coverage issue, because coverage isn't

21   triggered.

22          One of the primary arguments we have, as far as the

23   commonality and typicality for this case, is that at the end of

24   the day, this case, in particular, and any future potential

25   claim, you'd have to ultimately prove insurability.  You'd have

1   to show that, based on everything that's already been said on

2   the summary judgment issue, where LINA has the right for its

3   medical underwriting department to analyze these applications,

4   to evaluate what medical conditions are being raised,

5   individual coverage determination has to be made on a

6   case-by-case basis.

7           Here, there's this generalized framework laid out in the

8   class definition that there's no workable way that this

9   plaintiff's individual claim, did Mr. Gordon satisfy that

10  insurability requirement had he submitted an application,

11  that's going to be separate and apart from any other potential

12  claimant that's identified in discovery or not identified.

13  That's an individual determination.

14          That's our primary argument, is that the issues of

15  commonality/typicality under 23(a), and then, under 23(b), the

16  issues of predominance and manageability, you can't manage that

17  in a class action lawsuit, especially against just the

18  employer.  You're going to have the medical underwriting

19  department of LINA involved in all aspects of this case, trying

20  to say, well, had I been submitted this application with these

21  medical conditions, here's what our policy is or here's how

22  we'd evaluate coverage.

23          These are individualized determinations.  These are not

24  class-wide determinations.  There are no facts alleged in this

25  complaint to harmonize that as a class-wide basis, and we think

1  that for that reason, class certification should be denied at

2  this stage.

3        As far as the numerosity issues concerned, that's true

4  that discovery could identify these claims.  But like I said,

5  they're going to be an individualized determination.

6        Our motion was predicated on the facts alleged in the

7  complaint.  We think that there's insufficient facts alleged to

8  bring this in the requirements of Rule 23, which the plaintiffs

9  are required to allege sufficient facts to show compliance with

10  23(a), all four subsections, and at least one subsection of

11  23(b).  Those facts simply aren't here.

12        The only argument that's before the Court really in

13  dispute is would discovery cure that issue, and I do not think

14  it be will because of those individualized aspects.  And

15  therefore, we would ask that the Court deny class

16  certification.

17        Your Honor, in light of the summary judgment ruling, I'm

18  going to forego my alternative arguments on severability.

19          THE COURT:  All right, let me hear from the

20  plaintiff.

21          **ARGUMENT BY MR. TYCKO FOR THE PLAINTIFF**

22          MR. TYCKO:  Thank you, Your Honor.  Jonathan Tycko.

23  I'll be handling this motion.  So let me quickly just jump in

24  and address the, essentially, three arguments that I think

25  Mr. Cornelius just made.

1          First, he said that there were no facts alleged in the

2   complaint suggesting that other people also -- essentially

3   overpaid for supplemental life insurance.  That is contrary,

4   certainly, to the allegations of the complaint.  But even

5   putting aside the allegations, there is evidence in the record

6   already from which the Court could draw an inference, maybe not

7   a conclusion yet, but an inference that Mr. Gordon was not

8   alone in this situation.

9          In particular, I would point the Court towards the two

10  documents that are in the record that show what Mr. Gordon was

11  actually told at the time of his enrollment by UCG.  One of

12  those is the March 26, 2013 e-mail that he received.  This was

13  just on the eve of him becoming employed by UCG, where they

14  provided him with various documents relating to the benefits.

15  And then there's the UCG enrollment guide, which is sort of

16  their internal handbook that they give to employees -- at least

17  that's our understanding -- that explains the employee

18  benefits.

19         And the key thing to note about those two documents --

20  and the first one, by the way, is at docket number 38-2.

21  That's the e-mail.  The enrollment guide is at docket number

22  34-12.

23         The key thing to note about both of those documents is

24  that neither of them mentions an application, an

25  evidence-of-insurability application.

1          And so there is a -- it does seem to us, Your Honor, that

2     at least at or about the time that Mr. Gordon enrolled, UCG

3     simply did not have a procedure in place to inform employees of

4     the need to submit the evidence-of-insurability application

5     and, yet, began to deduct those premiums from the employees'

6     paychecks, knowing that no application had been submitted.  At

7     least that is a reasonable inference that could be drawn from

8     the record that's in front of the Court now, without any

9     discovery yet conducted.

10         Second, in terms of what the discovery would be, it would

11    be relatively easy to determine, I think, Your Honor, whether

12    there are other people that are in the same position as

13    Mr. Gordon.  Clearly, UCG knows whose paychecks they have been

14    deducting premiums from for supplemental life insurance, and

15    UCG presumably also knows which of those people have submitted

16    evidence-of-insurability applications.  In fact, Your Honor, I

17    would be surprised if UCG's counsel doesn't already know that,

18    and we would be entitled to discover that.

19         So I think we would be able to determine relatively

20    quickly whether other people were in the same position as

21    Mr. Gordon and how many such people there were.

22         Finally, Mr. Cornelius made the argument that this is

23    essentially a predominance argument; that the insurability

24    issues would require, essentially, medical underwriting of any

25    individual who has been paying premiums but wasn't already

1   underwritten by Cigna, sort of an implicit admission that there

2   are such people, Your Honor.  But it's also not legally

3   correct.

4        And the answer to that, Your Honor, is the *McCravy* case

5   which we cite in our brief and which we've provided to Your

6   Honor.  The teaching of *McCravy* really is that in a

7   circumstance that is essentially factually indistinguishable

8   from these, that the plaintiff can allege a claim for payment

9   of benefits under what is essentially an equitable estoppel

10  theory, that estops the insurer -- or in this case it would be

11  the employer -- from challenging the insurability if they have

12  been keeping and retaining the premiums over an extended period

13  of time.  That is really the teaching of *McCravy*.  So under

14  that ruling, we would not be required to essentially medically

15  underwrite each member of the class.  It's simply not correct

16  legally.

17       I guess I would point out, Your Honor, that what brings

18  us here today is a somewhat fortuitous event, although an

19  unfortunate event, which is that Mr. Gordon died while he was

20  still covered by this policy.  For most people, the policy

21  expires when they cease employment.  So if Mr. Gordon had

22  retired and lived a long, healthy life, he would never have

23  known that those premiums that he had paid, really to protect

24  his wife, our client, with that insurance, he would never have

25  known that those premiums had, in fact, bought him nothing, and

1   those premiums would have been retained for all time by LINA.

2       We don't know how many other people are in that set of

3   circumstances, and that is really the class of people, Your

4   Honor, that need protection through the class-action mechanism.

5   It's the people who have had the premiums deducted from their

6   paychecks, had their pay reduced and don't know, sitting here

7   today, that, in fact, they do not have the life insurance that

8   they think they have purchased for their spouses or children or

9   other beneficiaries.  And really, the only way to provide some

10  protection for those people, for us in the case, Your Honor, is

11  through the class-action mechanism.

12      So if you don't have any other questions, I'll stop at

13  that point.

14          THE COURT:  Thank you.  Let me hear from the

15  defendant.

16                  **ARGUMENT BY MR. CORNELIUS**

17             **FOR DEFENDANT UCG HOLDINGS AND OPIS**

18          MR. CORNELIUS:  Thank you, Your Honor.  Your Honor,

19  as set forth in our reply, the whole *McCravy* case has nothing

20  to do with class actions.  Nothing was said to suggest how we

21  could manage a class under this framework of this definition.

22  There's been no response to the difference in someone making a

23  claim as a beneficiary of a deceased employee versus merely an

24  employee who is supposedly unaware that they're paying premiums

25  for coverage that they don't have.

1          At the end of the day, the *McCravy* case, which I think is

2    distinguishable on several grounds, including the fact that it

3    has to do with the life insurer, not the employer, is if you're

4    looking at that individual case, they really were saying you

5    can't just rely on this is a return of premium situation.

6          In this situation, if you're looking at the equities of

7    this, this man was employed for seven months.  He enrolled in

8    insurance that, potentially, had he completed and submitted the

9    EOI application, he may have been denied and not had that

10   coverage either way.  At the end of the day, they're going to

11   have to demonstrate insurability.  And if this goes under the

12   class definition that's currently pending before the Court,

13   it's simply going to be unworkable because each case is going

14   to be its own individual entity.

15         Unless you have any further questions for me, Your Honor,

16   I have nothing further.

17                         **THE COURT'S RULING**

18         THE COURT:  All right.  The defendant Oil Price

19   Information Services has filed a motion to deny class

20   certification or, in the alternative, to sever and/or separate

21   class claims.  I have considered the motion and the opposition

22   and the reply and the arguments of counsel.

23         I conclude -- and this is an attempted preemptive motion

24   to stop the case from being certified as a class action.  I

25   think the motion in this case is premature.

1      I am not concluding that this could ever be a class

2   action.  It may be there's only two or three people that are in

3   the circumstances that are described in this case; it could be

4   there's a thousand.  I have nothing before me that would answer

5   that question.  And I think that while I might ultimately, when

6   a properly prepared motion to certify a class is filed, deny

7   it, I might also grant it, and I don't think I've got enough

8   information now on which I could possibly make that

9   determination.

10      Accordingly, I am going to deny the motion number 21

11   without prejudice to the party being able to assert in

12   opposition to a future motion for class certification the same

13   or similar arguments at that time.

14      Now, counsel, I think this case is now at issue with

15   respect to Oil Price Information Services and is appropriate

16   for issuance of a scheduling order.  I'm not missing anything,

17   am I?

18          MR. TYCKO:  Correct, Your Honor, we would need a

19   scheduling order.

20          THE COURT:  Then I will have a scheduling order

21   issued.

22      I will tell you now what I usually do in a conference

23   call, and I can save the time that I would have to do in a

24   conference call.  The scheduling order will be issued.  I

25   encourage the parties to look at the dates in that order.  If

1   there's any problems with the dates, to confer with each other

2   and let me know if there's problems with the dates, and I will

3   try to be accommodating to counsel on any dates.

4        There's a couple of early dates that you're going to find

5   in that scheduling order, one of which will be agreement on

6   early mediation, and the second would be consent, now or at

7   some other time, for the proceedings to be decided by a

8   magistrate judge either in whole or in part.

9        To have a magistrate judge decide this case, as opposed

10  to deal with discovery issues, requires consent by both sides.

11  If you were to -- now or at any later time; it doesn't have to

12  be done right now -- were to decide that this case would be

13  appropriate for trial by a magistrate judge, all you have to do

14  is both agree to it, and it can be done.

15       The principal difference between a magistrate judge and

16  me would be how fast they could get to the case.  They can go

17  faster than I can.

18       I'm, allegedly, a senior judge who is, allegedly, slowing

19  down.  My wife reminds me on a daily basis that I am a failure

20  in that project.  I've been on the bench since nine o'clock

21  this morning and running a half an hour late already.

22       But to be serious, the speed with which the case could be

23  addressed by a magistrate judge is one factor.  And the

24  magistrate judges in this courthouse, all of them but one who

25  recently joined us, have been judges longer than me, and I was

1  on the merit panels as an attorney that picked them.  So it

2  will tell you that I approve of them, and they've been judges

3  longer than me.

4        The second thing is early mediation.  This certainly

5  seems to me to be a case that would be a ripe candidate for

6  mediation.  I can't force that.  I can cajole and harass you

7  and push you around to try to do it.  But mediation is good.

8  It is much more efficient than spending lots of time and

9  papers, like this proceeding today, on something that seems to

10 be fairly simple.

11       The only thing that makes this case complicated is if it

12 does get certified as a class, and it goes way beyond the

13 unfortunate circumstances of Stephen Gordon.

14       But I would encourage you both to think about mediation.

15 Mediation -- and the order is going to say early mediation.

16 All that means is early.  If it doesn't happen now, it won't be

17 early.  But I want you to understand that the doors are never,

18 never closed on mediation by magistrate judges of this court.

19 It simply wouldn't be early.

20       So if you want to do mediation, all you have to do is

21 tell me yes and it will happen.  It would be better to happen

22 now than after you spend a bajillion dollars of time going

23 through discovery and moving to certify a class and everything

24 else.

25       So I would encourage the parties to engage in mediation.

1   You just simply need to let me know.  And if the answer is yes,

2   then we will schedule it.  It's going to take probably about

3   three months to get you in before a magistrate judge, but I

4   would urge you to think about that.

5         But those are the things that I would say in an early

6   conference call.  When you get the order, look at it, discuss

7   it with each other.  And if you have any problems with the

8   dates, let us know.  Hopefully, send us something where you've

9   reached agreement on it, and I'll try to accommodate you

10   whenever I can.

11         If mediation is something you want to do, just let us

12   know, and we will get you in before a magistrate judge.

13         All right?  Thank you very much.

14         (The hearing concluded at 12:00 noon.)

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Cindy S. Davis, Federal Official Court Reporter in and

4    for the United States District Court for the Southern District

5    of Maryland, do hereby certify that I reported, by machine

6    shorthand in my official capacity, the proceedings had in the

7    motions hearing in the case of Kimberly P. Gordon versus Cigna

8    Corporation, et al., case number 16-cv-00238-RWT, in said court

9    on July 28, 2016.

10         I further certify that the foregoing 54 pages constitute

11   the official transcript of said proceedings, as taken from my

12   machine shorthand notes to the best of my ability.

13         In witness whereof, I have hereto subscribed my name this

14   fifth day of August, 2016.

15

16

17

18

19              *Cindy S. Davis*

20         _____

21         CINDY S. DAVIS, RPR
           FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

## $

**$100,000** [3] - 6:16, 6:18, 7:13
**$179** [2] - 11:13, 11:16
**$250,000** [1] - 7:8
**$50,000** [1] - 6:12

## 1

**1** [1] - 22:6
**1005** [1] - 25:15
**12:00** [1] - 54:14
**15** [3] - 24:5, 26:10, 27:12
**16-cv-00238-RWT** [1] - 55:8
**17** [1] - 3:5
**18** [1] - 22:9

## 2

**2013** [4] - 6:24, 7:1, 7:8, 46:12
**2014** [1] - 7:2
**2016** [2] - 55:9, 55:14
**21** [3] - 24:6, 24:7, 51:10
**23** [1] - 45:8
**23(a** [2] - 44:15, 45:10
**23(b** [1] - 44:15
**23(b)** [1] - 45:11
**26** [1] - 46:12
**28** [1] - 55:9

## 3

**3** [1] - 22:4
**321** [3] - 23:11, 28:21, 32:12
**321(c)(1)(A** [1] - 41:25
**33** [1] - 3:6
**34** [1] - 36:5
**34-12** [2] - 24:3, 46:22
**34-6** [1] - 22:5
**35** [1] - 3:7
**38-2** [1] - 46:20

## 4

**406** [1] - 16:5
**41** [1] - 3:9
**45** [1] - 3:10
**49** [1] - 3:11

## 5

**5** [1] - 3:4
**50** [1] - 3:12
**54** [1] - 55:10
**56(d** [1] - 40:19
**56(d)** [2] - 40:5, 40:9

## 7

**733** [1] - 25:14

## 9

**9** [1] - 23:23

## A

**abbreviations** [1] - 41:18
**ability** [2] - 31:7, 55:12
**able** [9] - 5:9, 14:13, 18:3, 29:13, 34:20, 43:4, 43:5, 47:19, 51:11
**absence** [4] - 17:19, 22:22, 23:15, 31:7
**absent** [1] - 40:25
**absolutely** [1] - 29:4
**acceptance** [4] - 12:4, 14:18, 33:11, 39:4
**accepted** [1] - 33:15
**accepting** [3] - 10:19, 27:10, 27:11
**accepts** [1] - 26:23
**accommodate** [1] - 54:9
**accommodating** [1] - 52:3
**accordingly** [2] - 41:6, 51:10
**account** [2] - 14:14, 32:14
**accurately** [1] - 13:16
**acknowledged** [2] - 14:2, 35:18
**acronyms** [1] - 41:17
**acting** [4] - 23:18, 23:19, 26:23, 28:14
**ACTION** [2] - 3:8, 41:9
**action** [14] - 4:4, 16:2, 25:4, 25:11, 25:18, 41:11, 42:4, 43:3, 44:17, 49:4, 49:11, 50:24, 51:2
**actions** [1] - 49:20

**activities** [9] - 9:20, 9:22, 14:11, 14:22, 24:22, 24:23, 30:7, 34:24
**activity** [2] - 8:7, 9:10
**actual** [5] - 17:15, 28:25, 29:20, 32:18, 35:3
**actuality** [1] - 32:9
**actuarial** [1] - 21:11
**addition** [5] - 22:6, 23:22, 28:18, 32:25, 36:13
**additional** [16] - 10:5, 18:9, 19:1, 19:5, 26:25, 28:12, 30:14, 31:2, 31:5, 31:24, 35:11, 37:6, 37:7, 37:15, 42:15, 42:25
**address** [5] - 15:14, 20:16, 21:1, 36:2, 45:24
**addressed** [4] - 10:18, 13:3, 33:19, 52:23
**addressing** [1] - 17:9
**adhere** [1] - 7:18
**adherence** [1] - 39:8
**adjudicate** [1] - 15:6
**adjudicated** [1] - 9:22
**adjudicating** [1] - 6:9
**adjudication** [3] - 7:5, 14:24, 35:8
**adjudicator** [2] - 9:6, 14:8
**administer** [2] - 22:8, 24:12
**administered** [1] - 6:5
**administration** [13] - 7:17, 8:15, 15:6, 21:25, 22:6, 23:14, 29:20, 29:21, 30:5, 30:18, 32:21, 34:1, 36:15
**administrative** [2] - 35:6, 36:15
**administrator** [8] - 8:14, 11:8, 14:10, 33:14, 34:23, 34:25, 38:9, 39:13
**admission** [1] - 48:1
**admittedly** [1] - 13:15
**adopt** [1] - 25:17
**advise** [1] - 10:7
**affected** [1] - 42:18
**affidavit** [3] - 18:21, 29:17, 40:19

**affidavits** [1] - 41:1
**affirmed** [1] - 10:2
**ago** [1] - 14:17
**agree** [3] - 29:4, 41:22, 52:14
**agreement** [2] - 52:5, 54:9
**ahead** [1] - 15:16
**al** [2] - 4:5, 55:8
**alert** [1] - 9:25
**align** [1] - 16:17
**alive** [1] - 43:18
**all-or-nothing** [1] - 8:6
**allegations** [6] - 5:23, 29:17, 33:20, 42:4, 46:4, 46:5
**allege** [2] - 45:9, 48:8
**alleged** [11] - 5:15, 14:23, 16:13, 16:24, 26:17, 42:24, 43:16, 44:24, 45:6, 45:7, 46:1
**allegedly** [2] - 52:18
**alleging** [1] - 15:21
**allocated** [1] - 36:11
**allocation** [3] - 29:7, 30:25, 37:10
**allow** [1] - 35:7
**allowed** [3] - 7:25, 9:14, 35:9
**alone** [3] - 28:9, 42:1, 46:8
**alternative** [6] - 15:19, 20:1, 25:3, 28:23, 45:18, 50:20
**America** [4] - 4:18, 36:11, 38:8, 38:14
**America's** [1] - 36:4
**amount** [3] - 6:15, 22:13, 22:21
**amounts** [1] - 21:14
**analysis** [1] - 39:24
**analyze** [1] - 44:3
**AND** [4] - 5:10, 33:5, 41:14, 49:17
**Anna** [1] - 4:10
**annual** [1] - 21:19
**answer** [5] - 5:24, 28:18, 48:4, 51:4, 54:1
**answers** [2] - 22:14, 22:19
**apart** [1] - 44:11
**apologize** [1] - 17:5
**appeal** [1] - 39:14
**appear** [1] - 39:3
**appearing** [1] - 24:15
**applicable** [2] - 37:7, 38:22

**applicant** [1] - 22:18
**application** [10] - 7:11, 34:6, 34:8, 44:10, 44:20, 46:24, 46:25, 47:4, 47:6, 50:9
**applications** [3] - 8:17, 44:3, 47:16
**apply** [1] - 11:10
**appreciate** [1] - 33:2
**appropriate** [7] - 5:16, 13:4, 24:21, 43:2, 43:8, 51:15, 52:13
**appropriately** [1] - 15:10
**approve** [2] - 22:16, 53:2
**approved** [5] - 6:20, 6:21, 7:16, 8:1, 9:3
**Arevalo** [1] - 23:5
**argued** [1] - 10:10
**arguing** [1] - 11:3
**Argument** [6] - 3:4, 3:5, 3:6, 3:9, 3:10, 3:11
**argument** [14] - 10:18, 18:6, 18:17, 21:1, 21:3, 32:11, 33:13, 33:14, 33:16, 37:24, 44:14, 45:12, 47:22, 47:23
**ARGUMENT** [6] - 5:10, 17:7, 33:4, 41:13, 45:21, 49:16
**arguments** [6] - 38:13, 43:22, 45:18, 45:24, 50:22, 51:13
**articulate** [1] - 27:22
**ascertain** [2] - 9:23, 31:8
**aside** [1] - 46:5
**aspect** [2] - 19:25, 26:1
**aspects** [3] - 8:15, 44:19, 45:14
**assert** [1] - 51:11
**asserting** [1] - 15:19
**asserts** [1] - 37:19
**assessed** [1] - 39:13
**assessment** [1] - 24:20
**assets** [13] - 10:12, 16:11, 18:7, 18:19, 20:3, 20:13, 20:19, 20:22, 23:6, 23:7, 23:8, 32:12, 32:17
**assure** [1] - 24:18
**attached** [5] - 11:12, 11:14, 11:25, 34:16,

37:8
**attempted** [1] - 50:23
**attorney** [1] - 53:1
**attributable** [1] -
21:15
**audit** [1] - 35:12
**August** [1] - 55:14
**auspices** [1] - 36:10
**authored** [1] - 38:24
**authority** [9] - 20:13,
20:24, 20:25, 23:9,
23:13, 29:8, 29:10,
32:18
**automatic** [1] - 36:19
**automatically** [1] -
13:21
**available** [1] - 11:1
**aware** [3] - 15:25,
26:7, 27:17

## B

**bag** [1] - 14:1
**bajillion** [1] - 53:22
**Barney** [1] - 16:9
**based** [4] - 18:11,
22:20, 41:25, 44:1
**bases** [1] - 28:20
**basic** [3] - 6:11,
11:22, 30:23
**basis** [14] - 12:5,
37:14, 37:21, 38:3,
38:6, 40:7, 40:15,
40:19, 41:4, 42:2,
43:7, 44:6, 44:25,
52:19
**bat** [1] - 15:24
**beautifully** [1] -
38:25
**became** [1] - 33:16
**become** [4] - 20:18,
20:22, 23:6, 23:8
**becomes** [1] - 10:14
**becoming** [1] - 46:13
**began** [1] - 47:5
**BEHALF** [1] - 17:7
**behalf** [5] - 4:17,
4:25, 8:20, 17:9,
41:16
**bench** [1] - 52:20
**beneficiaries** [1] -
49:9
**beneficiary** [3] - 6:1,
43:17, 49:23
**beneficiary's** [1] -
9:15
**benefit** [4] - 6:4,
36:24, 39:9, 42:16
**Benefit** [1] - 25:14
**benefits** [11] - 6:11,

7:3, 21:23, 31:23,
34:20, 35:8, 35:10,
36:9, 46:14, 46:18,
48:9
**Berman** [1] - 4:21
**BERMAN** [1] - 4:23
**best** [1] - 55:12
**bet** [1] - 26:25
**better** [1] - 53:21
**between** [2] - 36:12,
52:15
**beyond** [3] - 29:9,
43:13, 53:12
**big** [1] - 19:4
**bilateral** [1] - 16:6
**billing** [2] - 22:3,
37:13
**birth** [1] - 11:17
**bit** [1] - 30:21
**black** [1] - 30:18
**blindsides** [1] -
13:12
**blindsiding** [1] -
13:23
**Blumenfeld** [1] -
4:19
**blush** [1] - 12:20
**boat** [1] - 43:15
**bookkeeping** [1] -
42:16
**Boran** [2] - 3:4, 4:16
**BORAN** [15] - 4:16,
5:6, 5:10, 5:11, 10:9,
12:12, 12:19, 12:24,
15:14, 15:18, 17:3,
33:4, 33:6, 33:10,
33:25
**boran** [1] - 3:6
**bottom** [1] - 12:25
**bought** [2] - 38:1,
48:25
**breach** [17] - 14:22,
15:23, 16:19, 25:4,
25:6, 25:23, 26:4,
26:13, 26:19, 38:10,
38:12, 39:17, 40:22,
40:23, 40:24, 40:25,
41:4
**breached** [2] - 7:23,
26:2, 38:18
**breaches** [3] - 5:14,
16:24, 27:7
**brief** [6] - 8:9, 8:10,
12:8, 13:4, 48:5
**briefed** [1] - 15:25
**briefing** [3] - 20:11,
23:15, 33:19
**briefly** [1] - 13:3
**bring** [1] - 45:8
**brings** [1] - 48:17

**broad** [1] - 5:23
**brought** [1] - 16:10
**bulk** [4] - 13:18,
22:3, 28:5
**burden** [1] - 35:11
**business** [2] - 13:2,
27:9
**buy** [1] - 12:14
**BWX** [1] - 10:18,
39:21
**BY** [6] - 5:10, 17:7,
33:4, 41:13, 45:21,
49:16

## C

**Cadillac** [2] - 12:15,
12:16
**cajole** [1] - 53:6
**Cajun** [1] - 39:25
**calculating** [3] -
8:20, 9:18, 13:16
**candidate** [1] - 53:5
**candidly** [2] - 14:2,
35:18
**cannot** [1] - 28:13
**capacity** [2] - 26:23,
28:15, 55:6
**car** [2] - 37:25
**care** [2] - 27:22, 35:5
**Carolina** [1] - 25:15
**case** [106] - 5:20,
5:21, 5:24, 6:6, 6:14,
8:2, 8:7, 8:8, 9:4,
9:11, 9:13, 10:16,
10:18, 10:22, 11:5,
12:9, 13:7, 13:9, 14:5,
14:16, 15:25, 16:9,
16:13, 18:12, 18:24,
20:7, 20:11, 20:12,
21:1, 22:23, 23:5,
25:8, 25:21, 26:9,
26:13, 26:17, 26:20,
28:8, 29:6, 29:18,
30:10, 30:13, 31:18,
31:19, 31:21, 31:22,
32:1, 32:3, 32:4, 32:6,
33:10, 33:13, 33:24,
36:6, 36:25, 37:4,
37:9, 37:19, 37:21,
38:4, 38:6, 38:14,
38:24, 39:7, 39:11,
39:16, 39:19, 39:21,
40:4, 40:5, 40:16,
40:20, 40:25, 42:7,
42:9, 42:20, 43:5,
43:6, 43:23, 43:24,
44:6, 44:19, 48:4,
48:10, 49:10, 49:19,
50:1, 50:4, 50:13,

50:24, 50:25, 51:3,
51:14, 52:9, 52:12,
52:16, 52:22, 53:5,
53:11, 55:7, 55:8
**case-by-case** [1] -
44:6
**cases** [18] - 14:4,
14:7, 17:12, 18:13,
18:15, 20:16, 20:21,
21:4, 21:8, 23:4, 32:6,
33:18, 38:21, 39:22,
39:23, 40:14, 40:17,
40:18
**cease** [1] - 48:21
**Ceridian** [1] - 34:22
**certain** [5] - 20:14,
24:22, 24:23, 31:7,
36:21
**certainly** [11] - 11:1,
17:18, 20:1, 22:22,
23:16, 27:20, 28:13,
28:21, 41:4, 46:4,
53:4
**CERTIFICATE** [1] -
55:1
**certification** [6] -
41:12, 41:25, 45:1,
45:16, 50:20, 51:12
**CERTIFICATION** [2]
- 3:8, 41:9
**certified** [2] - 50:24,
53:12
**certify** [4] - 51:6,
53:23, 55:5, 55:10
**challenging** [1] -
48:11
**change** [3] - 19:23,
28:4, 28:8
**charged** [2] - 7:16,
9:2, 11:19
**check** [1] - 19:4
**cheerfully** [1] - 10:4
**Chevrolet** [5] -
12:17, 12:23, 37:25,
38:1
**children** [1] - 49:8
**Chris** [1] - 4:16
**Cigna** [57] - 4:5,
4:19, 5:12, 7:22, 8:3,
9:13, 10:1, 12:9,
12:18, 12:21, 12:25,
13:1, 13:4, 15:20,
17:21, 18:10, 22:5,
22:9, 22:10, 22:14,
23:10, 23:19, 24:10,
24:12, 24:14, 25:25,
26:7, 26:11, 26:13,
26:16, 26:18, 26:22,
27:5, 27:9, 27:14,
27:16, 28:9, 28:22,

30:15, 31:6, 31:7,
31:16, 35:23, 36:3,
36:10, 37:21, 38:3,
38:6, 40:3, 40:11,
41:7, 41:19, 42:6,
48:1, 55:7
**CIGNA** [2] - 5:10,
33:5
**Cigna's** [2] - 20:2,
41:23
**Cigna/LINA** [3] - 3:4,
3:6, 41:19
**Cindy** [1] - 55:3
**CINDY** [1] - 55:20
**Circuit** [17] - 9:5,
10:2, 10:17, 11:3,
12:3, 13:10, 15:25,
16:1, 16:17, 18:11,
21:4, 25:10, 25:12,
25:17, 33:17, 38:22,
39:22
**circuit** [1] - 25:13
**circumstance** [6] -
13:25, 14:12, 20:22,
27:18, 42:25, 48:7
**circumstances** [16] -
7:5, 9:16, 11:9, 14:6,
15:8, 16:22, 17:22,
26:9, 33:20, 36:6,
39:7, 39:16, 40:15,
49:3, 51:3, 53:13
**cite** [2] - 33:18, 48:5
**cited** [6] - 8:8, 8:9,
8:10, 9:11, 18:13,
23:4
**civil** [1] - 4:4
**claim** [22] - 7:3, 7:5,
7:12, 8:23, 8:25, 9:15,
12:6, 14:24, 15:1,
16:9, 16:13, 16:23,
25:22, 38:23, 39:1,
39:12, 40:7, 41:4,
43:25, 44:9, 48:8,
49:23
**claimant** [1] - 44:12
**claims** [22] - 6:8, 6:9,
9:6, 9:22, 14:8, 15:6,
16:15, 20:14, 24:16,
29:21, 30:17, 32:21,
32:24, 33:23, 35:7,
36:14, 37:19, 38:8,
39:12, 42:18, 45:4,
50:21
**CLASS** [2] - 3:8, 41:9
**class** [31] - 5:23,
41:11, 41:25, 42:4,
42:5, 42:10, 42:19,
43:3, 43:8, 43:11,
44:8, 44:17, 44:24,
44:25, 45:1, 45:15,

48:15, 49:3, 49:4, 49:11, 49:20, 49:21, 50:12, 50:19, 50:21, 50:24, 51:1, 51:6, 51:12, 53:12, 53:23
**class-action** [2] - 49:4, 49:11
**class-wide** [2] - 44:24, 44:25
**clear** [12] - 6:18, 8:14, 11:15, 14:21, 17:13, 19:8, 20:11, 20:21, 26:6, 34:10, 34:12, 37:10
**clearly** [4] - 19:17, 24:17, 30:16, 47:13
**client** [2] - 22:16, 48:24
**clients** [1] - 41:18
**close** [1] - 23:3
**closed** [1] - 53:18
**co** [3] - 38:12, 40:22, 41:4
**co-fiduciary** [3] - 38:12, 40:22, 41:4
**cognizable** [1] - 25:18
**Coleman** [9] - 8:8, 9:4, 13:9, 13:23, 14:5, 17:11, 29:5, 38:24, 39:1
**collect** [1] - 21:25
**collected** [7] - 18:25, 19:5, 20:8, 21:5, 37:6, 37:16, 38:16
**collecting** [5] - 8:20, 11:5, 13:17, 19:19, 41:2
**collection** [1] - 28:10
**colorful** [1] - 38:25
**coming** [2] - 11:2, 29:22
**commingled** [1] - 32:13
**common** [2] - 42:18, 43:6
**commonality** [2] - 42:21, 43:23
**commonality/ typicality** [1] - 44:15
**communicate** [1] - 22:24
**communication** [1] - 31:8
**companies** [7] - 12:10, 12:16, 13:2, 13:12, 38:5, 40:17, 42:6
**company** [24] - 7:21, 7:22, 9:5, 10:10,

10:14, 12:11, 13:5, 13:6, 13:18, 13:19, 14:7, 21:12, 22:1, 29:18, 31:4, 35:7, 35:9, 36:9, 37:19, 37:22, 38:2, 42:8, 42:12, 42:13
**Company** [7] - 4:18, 36:3, 36:11, 38:7, 38:14, 39:2, 39:25
**company's** [1] - 10:12
**compensation** [3] - 18:7, 18:15, 27:10
**complaint** [14] - 5:15, 5:22, 5:23, 35:24, 38:10, 41:20, 42:3, 42:5, 42:7, 42:24, 44:25, 45:7, 46:2, 46:4
**complete** [1] - 20:24
**completed** [2] - 22:11, 50:8
**completely** [1] - 13:25
**compliance** [1] - 45:9
**complicated** [1] - 53:11
**components** [1] - 6:15
**comprehensive** [1] - 35:12
**comprises** [1] - 42:9
**concept** [1] - 8:6
**concerned** [1] - 45:3
**concerning** [1] - 16:22
**conclude** [2] - 29:7, 50:23
**concluded** [1] - 54:14
**concludes** [1] - 25:21
**concluding** [2] - 12:6, 51:1
**conclusion** [5] - 17:23, 18:2, 18:4, 39:24, 46:7
**conditions** [3] - 22:21, 44:4, 44:21
**conduct** [7] - 5:14, 8:4, 13:7, 17:15, 23:20, 26:7, 28:25
**conducted** [1] - 47:9
**confer** [1] - 52:1
**conference** [3] - 51:22, 51:24, 54:6
**confirmed** [1] - 11:24

**confusing** [1] - 12:20
**Connecticut** [1] - 25:9
**connection** [1] - 37:16
**consent** [2] - 52:6, 52:10
**consider** [1] - 13:13
**consideration** [2] - 21:24, 40:20
**considered** [1] - 50:21
**constitute** [2] - 18:19, 55:10
**constituted** [1] - 23:20
**contact** [2] - 22:16, 24:10
**contained** [1] - 29:17
**contains** [1] - 38:10
**contention** [2] - 10:3, 26:2
**contested** [1] - 19:10
**context** [2] - 21:9, 27:2
**continued** [1] - 10:24
**contract** [2] - 39:5, 39:6
**contrary** [3] - 7:17, 10:17, 46:3
**contrast** [1] - 11:9
**contributions** [1] - 33:21
**control** [6] - 20:13, 20:25, 23:9, 23:12, 32:17, 32:18
**controlled** [1] - 38:5
**CORNELIUS** [8] - 4:24, 41:13, 41:15, 41:22, 42:23, 43:10, 49:16, 49:18
**cornelius** [1] - 3:9
**Cornelius** [5] - 3:11, 4:25, 41:16, 45:25, 47:22
**CORPORATION** [1] - 33:5
**Corporation** [6] - 4:5, 4:19, 7:22, 25:14, 36:3, 55:8
**correct** [7] - 12:12, 24:19, 25:11, 33:25, 48:3, 48:15, 51:18
**correctly** [3] - 8:17, 8:19, 13:16
**correspondence** [1] - 26:5
**counsel** [9] - 4:7, 17:5, 25:2, 25:11, 41:23, 47:17, 50:22,

51:14, 52:3
**count** [3] - 20:1, 25:3, 40:22
**Count** [21] - 5:15, 5:17, 7:19, 14:23, 15:9, 15:15, 15:18, 17:17, 28:23, 32:22, 32:25, 35:1, 35:23, 35:24, 38:11, 38:12, 38:23, 39:17, 40:1, 41:7
**counter** [1] - 21:16
**counts** [1] - 38:10
**couple** [1] - 52:4
**COURT** [48] - 4:14, 4:22, 5:3, 5:8, 10:3, 12:8, 12:14, 12:22, 15:12, 15:16, 17:7, 17:4, 17:23, 18:1, 18:11, 18:20, 19:10, 19:21, 20:4, 21:3, 21:17, 23:25, 24:4, 24:7, 26:12, 27:21, 29:2, 29:16, 30:1, 30:9, 30:12, 30:21, 31:9, 31:18, 32:10, 33:3, 33:9, 33:23, 36:1, 41:10, 41:21, 42:11, 43:1, 45:19, 49:14, 50:18, 51:20, 55:21
**court** [6] - 4:2, 10:18, 18:3, 25:16, 53:18, 55:8
**Court** [28] - 4:4, 4:6, 5:11, 9:16, 9:20, 16:3, 16:8, 16:16, 16:20, 22:4, 23:5, 25:13, 25:20, 25:25, 33:1, 35:22, 38:9, 39:4, 39:5, 39:10, 45:12, 45:15, 46:6, 46:9, 47:8, 50:12, 55:3, 55:4
**COURT'S** [2] - 35:25, 50:17
**Court's** [3] - 3:7, 3:12, 33:2
**courthouse** [1] - 52:24
**COURTROOM** [1] - 4:3
**Courts** [1] - 18:16
**courts** [3] - 14:6, 16:14, 20:12
**coverage** [42] - 6:18, 6:20, 7:9, 7:12, 7:16, 8:1, 9:3, 9:7, 9:14, 10:7, 10:20, 10:23, 11:1, 11:16, 11:20,

11:22, 11:23, 19:6, 19:16, 20:18, 21:14, 21:15, 21:18, 22:13, 22:16, 24:21, 30:23, 31:5, 33:11, 33:15, 36:19, 36:23, 37:1, 37:7, 37:16, 43:20, 44:5, 44:22, 49:25, 50:10
**covered** [1] - 43:17, 48:20
**crystal** [1] - 14:21
**cure** [1] - 45:13
**curious** [2] - 12:9, 12:12
**cyclical** [1] - 37:13

**D**

**daily** [1] - 52:19
**data** [3] - 22:19, 23:1, 31:7
**date** [1] - 11:17
**dates** [6] - 51:25, 52:1, 52:2, 52:3, 52:4, 54:8
**Davis** [1] - 55:3
**DAVIS** [1] - 55:20
**deal** [1] - 52:10
**death** [1] - 42:15
**deceased** [3] - 6:23, 43:17, 49:23
**decedent** [1] - 36:25
**decedent's** [1] - 20:7
**decedents'** [1] - 42:15
**decide** [2] - 52:9, 52:12
**decided** [2] - 19:13, 52:7
**deciding** [1] - 43:2
**decision** [9] - 8:8, 8:9, 8:10, 9:5, 10:1, 10:2, 12:3, 16:3, 31:11
**decisions** [1] - 18:11
**declaration** [4] - 12:1, 22:5, 23:23, 35:17
**deduct** [1] - 47:5
**deducted** [1] - 49:5
**deducting** [3] - 8:21, 9:18, 47:14
**deemed** [1] - 17:15
**Defendant** [4] - 3:4, 3:6, 3:9, 3:11
**defendant** [14] - 7:21, 12:13, 13:4, 19:19, 28:25, 33:13, 33:15, 36:3, 36:7,

37:4, 37:21, 41:10, 49:15, 50:18

**DEFENDANT** [2] - 41:14, 49:17

**defendant's** [2] - 23:1, 26:3

**defendants** [31] - 4:17, 4:25, 5:13, 5:17, 7:20, 7:21, 9:13, 15:10, 17:24, 18:10, 20:16, 23:10, 23:18, 23:19, 24:12, 25:25, 26:7, 26:11, 26:19, 27:16, 28:22, 31:16, 37:20, 40:2, 40:3, 40:11, 41:8, 41:16, 41:19, 42:1, 42:17

**DEFENDANTS** [2] - 5:10, 33:5

**defendants'** [1] - 27:14

**defense** [1] - 40:8

**defer** [2] - 40:20, 43:2

**defined** [2] - 16:7, 43:11

**definition** [8] - 42:5, 42:10, 43:11, 43:13, 43:16, 44:8, 49:21, 50:12

**delegation** [1] - 15:4

**demonstrate** [4] - 29:14, 32:24, 35:2, 50:11

**demonstrates** [2] - 15:5, 16:21

**demonstrating** [1] - 12:5

**denied** [6] - 5:23, 7:11, 9:15, 39:13, 45:1, 50:9

**deny** [6] - 40:20, 41:25, 45:15, 50:19, 51:6, 51:10

**depart** [1] - 39:6

**department** [2] - 44:3, 44:19

**deprived** [1] - 42:15

**DEPUTY** [1] - 4:3

**described** [2] - 25:2, 51:3

**designated** [3] - 11:7, 13:15, 33:14

**designed** [1] - 22:7

**detail** [2] - 25:16, 25:19

**detailed** [2] - 11:19, 16:16

**determination** [9] - 17:12, 24:17, 30:17,

39:15, 42:22, 44:5, 44:13, 45:5, 51:9

**determinations** [5] - 24:18, 30:8, 30:19, 44:23, 44:24

**determine** [7] - 9:23, 22:12, 24:25, 30:13, 43:5, 47:11, 47:19

**determined** [1] - 14:7

**develop** [1] - 42:12

**developed** [2] - 32:23, 43:12

**DIDUCK** [1] - 25:10

**Diduck** [1] - 25:10

**died** [1] - 48:19

**difference** [2] - 49:22, 52:15

**different** [6] - 14:11, 16:4, 26:8, 33:20, 36:18

**differing** [1] - 25:12

**difficult** [1] - 21:11

**direct** [1] - 31:8

**directly** [2] - 4:12, 22:15

**directs** [1] - 24:9

**discounted** [1] - 28:13

**discover** [1] - 47:18

**discovery** [24] - 17:19, 18:9, 19:8, 19:14, 21:10, 22:23, 23:15, 24:25, 27:1, 29:14, 31:14, 32:24, 40:5, 40:8, 40:16, 42:11, 43:5, 44:12, 45:4, 45:13, 47:9, 47:10, 52:10, 53:23

**discretionary** [4] - 20:24, 23:12, 29:8, 32:17

**discuss** [1] - 54:6

**discussed** [1] - 35:21

**discussion** [1] - 34:1

**dismissed** [1] - 15:10

**disorders** [1] - 31:10

**disposition** [2] - 23:9, 38:23

**dispute** [9] - 5:25, 8:13, 18:3, 34:4, 36:25, 37:2, 37:5, 41:24, 45:13

**disputed** [3] - 18:21, 29:16, 30:2

**disputes** [2] - 17:24, 31:1

**distinct** [1] - 15:4

**distinguishable** [1] - 50:2

**District** [6] - 9:20, 25:9, 25:15, 39:20, 55:4

**division** [1] - 38:2

**docket** [5] - 22:5, 24:5, 36:4, 46:20, 46:21

**document** [8] - 14:3, 15:2, 22:9, 24:2, 24:6, 24:15, 24:16, 34:18

**documents** [26] - 7:6, 8:11, 8:12, 8:13, 11:12, 11:14, 11:25, 12:21, 12:24, 14:20, 14:23, 17:13, 19:22, 23:16, 29:2, 29:19, 34:18, 36:14, 36:21, 36:22, 37:8, 37:23, 46:10, 46:14, 46:19, 46:23

**dollars** [3] - 19:5, 21:19, 53:22

**done** [5] - 39:11, 41:20, 42:13, 52:12, 52:14

**doors** [1] - 53:17

**down** [1] - 52:19

**draw** [1] - 46:6

**drawn** [1] - 47:7

**during** [3] - 6:25, 7:15, 37:24

**duties** [6] - 7:23, 10:6, 12:4, 16:19, 32:7, 38:17

**duty** [11] - 10:6, 18:8, 20:20, 20:23, 25:6, 25:24, 26:2, 26:19, 27:7, 38:11, 39:17

---

**E**

**e-mail** [5] - 34:16, 34:18, 34:24, 46:12, 46:21

**early** [9] - 42:22, 52:4, 52:6, 53:4, 53:15, 53:16, 53:17, 53:19, 54:5

**earnings** [1] - 21:19

**Eastern** [2] - 9:20, 39:19

**easy** [1] - 47:11

**effect** [1] - 10:7

**effective** [1] - 6:21

**efficient** [1] - 53:8

**either** [3] - 22:15, 50:10, 52:8

**elect** [2] - 6:16, 30:23

**elected** [3] - 19:5, 36:19, 36:25

**element** [1] - 26:3

**elements** [1] - 25:23

**eligibility** [3] - 24:18, 30:8, 30:19

**eligible** [3] - 9:15, 10:20, 30:13

**emphasis** [1] - 39:8

**emphasize** [2] - 13:24, 14:12

**employed** [3] - 6:24, 46:13, 50:7

**employee** [12] - 6:23, 9:13, 10:23, 11:24, 22:2, 33:21, 36:24, 39:9, 43:17, 46:17, 49:23, 49:24

**employees** [13] - 6:4, 6:16, 11:19, 11:23, 13:17, 21:23, 37:14, 43:13, 43:14, 43:18, 46:16, 47:3

**employees'** [2] - 42:14, 47:5

**employer** [31] - 6:12, 7:20, 9:8, 9:9, 9:17, 10:25, 11:3, 11:22, 14:10, 18:24, 19:4, 21:6, 22:17, 26:2, 26:13, 26:16, 26:19, 26:21, 26:24, 30:20, 33:21, 35:12, 36:12, 36:17, 36:24, 37:5, 37:12, 44:18, 48:11, 50:3

**employer's** [2] - 27:8, 30:25

**employers** [2] - 27:15, 35:13

**employment** [5] - 10:24, 34:19, 36:7, 43:14, 48:21

**encountered** [1] - 19:19

**encourage** [3] - 51:25, 53:14, 53:25

**end** [7] - 17:20, 24:19, 24:20, 30:7, 30:18, 30:19, 43:23, 50:1, 50:10

**ending** [2] - 17:14, 29:5

**enforced** [1] - 9:8

**engage** [1] - 53:25

**engaged** [2] - 8:7, 16:6

**enhanced** [1] - 10:4

**enjoy** [1] - 14:13

**enroll** [2] - 9:14,

34:20

**enrolled** [8] - 6:25, 7:7, 9:24, 9:25, 10:23, 47:2, 50:7

**enrolling** [1] - 8:17

**enrollment** [12] - 8:16, 9:17, 9:23, 23:24, 30:22, 34:14, 34:15, 34:21, 36:15, 46:11, 46:15, 46:21

**ensure** [2] - 27:6, 28:17

**enter** [2] - 35:22, 41:7

**entirely** [2] - 30:19, 30:25

**entities** [6] - 16:7, 17:21, 27:9, 28:9, 30:15, 42:7

**entitled** [5] - 19:8, 28:9, 30:24, 40:3, 47:18

**entity** [1] - 50:14

**entry** [1] - 36:5

**enumerates** [1] - 22:15

**EOI** [4] - 34:2, 36:22, 37:17, 50:9

**equitable** [1] - 48:9

**equities** [1] - 50:6

**ERISA** [19] - 5:13, 7:23, 8:5, 15:22, 16:5, 16:7, 16:19, 17:13, 17:16, 23:11, 25:5, 25:7, 25:20, 28:25, 38:11, 38:18, 39:8, 39:17

**ERISA's** [3] - 8:5, 13:11, 16:14

**errors** [5] - 5:18, 11:15, 14:12, 14:9, 35:18

**especially** [1] - 44:17

**essentially** [9] - 10:9, 39:20, 45:24, 46:2, 47:23, 47:24, 48:7, 48:9, 48:14

**establishes** [1] - 35:17

**estates** [1] - 42:15

**estoppel** [1] - 48:9

**estops** [1] - 48:10

**et** [2] - 4:5, 55:8

**evaluate** [2] - 44:4, 44:22

**evaluation** [1] - 22:20

**eve** [1] - 46:13

**event** [2] - 48:18, 48:19

**evidence** [25] - 6:17, 6:19, 7:11, 7:24, 8:18, 15:2, 15:3, 16:21, 19:2, 21:20, 22:11, 24:24, 30:24, 31:3, 31:13, 31:19, 31:24, 36:20, 36:21, 37:1, 43:19, 46:5, 46:25, 47:4, 47:16
**evidence-of-insurability** [7] - 7:11, 7:24, 8:18, 24:24, 46:25, 47:4, 47:16
**Exactly** [1] - 12:24
**exactly** [4] - 13:22, 29:18, 29:22, 34:8
**example** [1] - 19:15
**excerpts** [1] - 15:22
**excess** [13] - 5:19, 10:13, 10:14, 10:15, 11:16, 18:7, 18:19, 18:23, 19:19, 27:4, 32:12, 32:20, 35:20
**excuse** [1] - 17:4
**exercise** [1] - 20:13
**exercised** [1] - 29:10
**exhibit** [5] - 11:25, 14:3, 15:2, 22:4, 23:23
**exist** [3] - 33:12, 33:16, 43:15
**existed** [1] - 14:2
**expand** [1] - 16:14
**expected** [1] - 28:16
**expedition** [1] - 40:13
**expires** [1] - 48:21
**explained** [2] - 9:20, 9:21
**explains** [3] - 13:1, 14:25, 46:17
**extended** [1] - 48:12
**extent** [4] - 6:17, 7:12, 8:7, 15:22

**F**

**F.Supp** [1] - 25:15
**face** [1] - 30:6
**faced** [1] - 18:16
**facie** [1] - 42:4
**fact** [23] - 11:2, 11:10, 14:14, 15:7, 17:20, 20:19, 20:21, 21:8, 21:15, 23:17, 26:20, 27:19, 28:2, 28:22, 29:10, 30:2, 30:3, 35:14, 40:2, 47:16, 48:25, 49:7, 50:2

**factor** [2] - 18:12, 52:23
**facts** [15] - 6:1, 9:2, 10:22, 12:5, 18:2, 40:7, 42:3, 42:23, 43:12, 44:24, 45:6, 45:7, 45:9, 45:11, 46:1
**factual** [3] - 9:12, 17:24, 32:23
**factually** [2] - 31:18, 48:7
**failed** [1] - 42:3
**failure** [1] - 52:19
**fairly** [1] - 53:10
**far** [3] - 34:2, 43:22, 45:3
**fast** [1] - 52:16
**faster** [1] - 52:17
**favor** [4] - 10:1, 35:23, 38:20, 41:7
**Federal** [1] - 55:3
**FEDERAL** [1] - 55:21
**fell** [1] - 30:19
**few** [3] - 7:2, 33:6, 34:20
**fiduciaries** [7] - 15:11, 15:20, 15:21, 17:21, 26:1, 28:22, 35:14
**fiduciary** [54] - 5:13, 6:8, 7:23, 8:3, 8:5, 8:6, 8:7, 8:11, 8:23, 9:9, 10:6, 10:14, 10:21, 11:6, 12:4, 13:11, 13:15, 13:21, 13:22, 14:9, 14:15, 14:19, 16:5, 17:12, 17:16, 18:1, 18:4, 18:8, 20:20, 20:23, 23:12, 23:21, 25:3, 25:7, 25:24, 26:19, 26:23, 27:7, 28:14, 28:15, 29:9, 30:16, 33:12, 33:16, 35:5, 38:10, 38:12, 38:17, 39:17, 40:22, 40:24, 41:4
**fiduciary's** [5] - 15:23, 16:19, 25:6, 26:13, 40:25
**fifteen** [1] - 24:7
**fifth** [1] - 55:14
**filed** [5] - 5:22, 9:1, 12:7, 16:23, 50:19, 51:6
**filled** [1] - 31:20
**finally** [1] - 47:22
**fine** [1] - 41:21
**finished** [1] - 15:17

**Finkelman** [1] - 4:13
**firm** [3] - 4:11, 4:12, 4:20
**first** [20] - 5:4, 7:4, 7:14, 8:2, 12:20, 14:25, 15:7, 15:24, 18:5, 19:18, 19:21, 23:3, 33:7, 33:10, 34:15, 35:4, 36:2, 41:1, 46:1, 46:20
**fishing** [1] - 40:13
**fit** [1] - 43:12
**focus** [1] - 33:8
**focussed** [1] - 42:6
**folks** [1] - 8:17
**followed** [1] - 19:17
**following** [1] - 22:15
**footer** [1] - 12:25
**FOR** [9] - 3:3, 3:8, 5:2, 5:10, 33:5, 41:9, 41:14, 45:21, 49:17
**for-profit** [1] - 21:12
**force** [2] - 11:10, 53:6
**forecloses** [1] - 16:23
**forego** [1] - 45:18
**foregoing** [1] - 55:10
**foremost** [1] - 18:5
**forget** [1] - 19:23
**form** [6] - 19:17, 22:11, 22:12, 24:24, 31:14, 31:19
**formal** [1] - 29:7
**formalities** [1] - 29:9
**former** [2] - 5:25, 6:22
**forms** [3] - 6:11, 21:18, 30:22
**forth** [9] - 7:13, 12:17, 16:15, 16:19, 28:4, 31:10, 36:16, 42:16, 49:19
**fortuitous** [1] - 48:18
**forward** [1] - 18:17
**foul** [2] - 40:12, 41:2
**foul-up** [2] - 40:12, 41:2
**four** [2] - 22:19, 45:10
**Fourth** [14] - 9:5, 10:2, 10:17, 11:3, 12:3, 13:10, 15:25, 16:1, 18:11, 21:4, 25:17, 33:17, 38:22, 39:22
**framework** [3] - 43:12, 44:7, 49:17
**front** [5] - 24:19, 30:7, 30:19, 43:3,

47:8
**fulfilled** [2] - 30:9, 30:12
**full** [3] - 11:21, 40:8, 40:16
**full-throated** [2] - 40:8, 40:16
**fully** [1] - 6:5
**function** [1] - 29:21
**functional** [3] - 17:16, 28:24, 29:12
**functionality** [1] - 29:14
**functions** [3] - 24:17, 35:6, 36:12
**funding** [1] - 33:22
**funds** [10] - 20:10, 20:18, 20:24, 20:25, 21:13, 27:3, 28:16, 32:13, 32:15, 32:16
**furry** [1] - 40:16
**future** [3] - 32:3, 43:24, 51:12

**G**

**general** [2] - 16:19, 25:19
**General** [1] - 37:24
**generalized** [1] - 44:7
**gentleman** [1] - 41:3
**genuine** [5] - 17:20, 23:17, 28:21, 30:2, 40:2
**Geopharma** [1] - 20:11
**germane** [1] - 32:3
**given** [1] - 29:19
**GM** [4] - 12:16, 12:22, 38:2
**goofed** [1] - 26:16
**Gordon** [29] - 4:4, 6:23, 7:3, 7:7, 7:15, 7:23, 8:19, 8:25, 9:2, 12:25, 15:1, 16:23, 19:18, 26:8, 26:11, 27:1, 34:5, 34:19, 35:19, 44:9, 46:7, 46:10, 47:2, 47:13, 47:21, 48:19, 48:21, 53:13
**gordon** [2] - 5:19, 55:7
**Gordon's** [5] - 7:4, 7:12, 15:8, 19:16, 36:7
**grant** [2] - 41:6, 51:7
**grasp** [1] - 23:1
**great** [1] - 39:8

**greater** [1] - 11:10
**gross** [1] - 37:14
**grounds** [1] - 50:2
**group** [5] - 12:10, 21:22, 22:8, 24:12, 26:24
**guaranteed** [2] - 6:15, 7:13
**Guaranty** [1] - 25:14
**guess** [1] - 48:17
**guide** [2] - 22:7, 23:24, 24:11, 34:14, 34:15, 46:15, 46:21
**guidelines** [1] - 22:9
**gun** [1] - 17:4

**H**

**Haac** [1] - 4:11
**half** [1] - 52:21
**hand** [2] - 8:22, 14:9
**handbook** [1] - 46:16
**handle** [2] - 28:5, 31:23
**handled** [2] - 18:9, 27:16
**handling** [4] - 20:10, 20:18, 26:17, 45:23
**hands** [1] - 10:12
**happy** [1] - 28:18
**harass** [1] - 53:6
**harmonize** [1] - 44:25
**Harris** [1] - 16:8
**Hartford** [1] - 25:8
**head** [1] - 34:2
**health** [2] - 6:17, 6:19
**healthy** [1] - 48:22
**hear** [7] - 5:4, 5:9, 15:12, 17:1, 41:10, 45:19, 49:14
**hearing** [4] - 4:6, 54:14, 55:7
**hearken** [1] - 29:25
**heart** [1] - 5:24
**held** [6] - 9:19, 10:19, 11:5, 14:14, 15:22, 16:18
**helping** [2] - 22:8, 24:12
**hereby** [1] - 55:5
**hereto** [1] - 55:13
**hesitant** [1] - 39:5
**higher** [3] - 31:24, 37:1, 37:16
**history** [1] - 26:16
**hit** [1] - 34:1
**hold** [2] - 20:12, 38:14

**holding** [6] - 7:22,
9:5, 12:3, 13:6, 14:1,
37:22
**HOLDINGS** [2] -
41:14, 49:17
**Holdings** [2] - 5:1,
41:16
**holdings** [1] - 42:13
**Honor** [54] - 4:9,
4:15, 4:16, 4:24, 5:7,
5:11, 5:21, 6:2, 6:7,
6:22, 7:19, 8:5, 9:4,
9:11, 10:9, 10:15,
11:5, 12:19, 13:8,
14:18, 15:9, 15:14,
16:14, 17:3, 17:8,
17:25, 24:2, 25:2,
28:19, 29:4, 31:14,
33:6, 33:25, 35:22,
41:15, 41:17, 41:22,
42:23, 43:10, 45:17,
45:22, 47:1, 47:11,
47:16, 48:2, 48:4,
48:6, 48:17, 49:4,
49:10, 49:18, 50:15,
51:18
**hopefully** [1] - 54:8
**hour** [1] - 52:21
**Hungerford** [3] -
19:17, 26:4, 35:1
**husband** [1] - 6:22
**hybrid** [1] - 30:21

### I

**idea** [3] - 12:6, 35:4,
38:15
**identical** [1] - 14:6
**identified** [2] - 44:12
**identify** [2] - 4:7,
45:4
**implications** [1] -
13:13
**implicit** [1] - 48:1
**important** [1] - 18:12
**importantly** [1] -
28:24
**improperly** [1] - 21:5
**inapproriate** [2] -
29:12, 39:7
**inappropriately** [1] -
41:3
**include** [1] - 24:23
**includes** [2] - 43:13,
43:14
**including** [4] - 8:25,
37:14, 39:24, 50:2
**incomplete** [1] -
22:19
**independent** [3] -

17:18, 28:7, 28:20
**indicate** [1] - 41:1
**indicates** [4] - 18:22,
19:16, 19:18, 40:12
**indisputably** [1] -
36:14
**indistinguishable**
[1] - 48:7
**individual** [9] -
11:11, 22:2, 43:17,
44:5, 44:9, 44:13,
47:25, 50:4, 50:14
**individualized** [5] -
5:25, 41:24, 44:23,
45:5, 45:14
**individually** [1] -
42:20
**individuals** [1] - 24:9
**indulge** [1] - 16:20
**inference** [3] - 46:6,
46:7, 47:7
**inform** [1] - 47:3
**information** [9] -
8:24, 11:24, 22:17,
23:2, 24:11, 24:19,
24:23, 43:3, 51:8
**Information** [7] - 5:1,
36:8, 37:4, 37:6,
41:11, 50:19, 51:15
**ingenious** [1] - 38:13
**initial** [3] - 24:18,
30:8, 41:23
**insofar** [2] - 7:23,
7:25
**instance** [3] - 26:25,
27:2, 27:11
**instead** [1] - 14:17
**insufficient** [1] - 45:7
**insurability** [24] -
7:11, 7:24, 8:18, 19:2,
21:20, 22:11, 24:24,
30:24, 31:3, 31:14,
31:19, 31:25, 36:20,
36:22, 37:2, 43:19,
43:25, 44:10, 46:25,
47:4, 47:16, 47:23,
48:11, 50:11
**insurable** [1] - 31:11
**insurance** [44] - 6:3,
6:7, 6:11, 6:13, 7:21,
9:5, 10:5, 10:10,
10:12, 10:14, 10:23,
12:13, 13:5, 13:12,
13:18, 13:19, 14:7,
19:1, 22:1, 22:8, 24:9,
24:13, 26:17, 29:18,
30:14, 31:2, 31:4,
31:24, 35:7, 35:9,
35:13, 36:9, 36:13,
36:20, 37:19, 38:16,

39:5, 42:6, 42:8, 46:3,
47:14, 48:24, 49:7,
50:8
**Insurance** [6] - 4:17,
36:3, 36:11, 38:7,
38:14, 39:2
**insure** [1] - 21:23
**insured** [4] - 22:25,
26:8, 31:8, 40:11
**insurer** [8] - 18:20,
21:6, 36:12, 36:13,
37:22, 38:8, 48:10,
50:3
**insurers** [1] - 27:22
**insuring** [1] - 21:18
**intake** [1] - 20:3
**interaction** [1] - 26:8
**interest** [2] - 16:7,
16:10
**intermingled** [1] -
37:15
**internal** [1] - 46:16
**invoked** [1] - 34:5
**involve** [1] - 33:19
**involved** [6] - 9:2,
9:12, 14:6, 34:12,
42:25, 44:19
**involvement** [1] -
5:18
**involving** [2] - 5:25,
39:8
**irrelevant** [1] - 31:18
**isolated** [1] - 43:7
**issuance** [1] - 51:16
**issue** [27] - 5:19, 6:3,
6:6, 6:13, 6:14, 6:15,
7:13, 8:4, 11:17, 13:7,
14:1, 15:4, 17:15,
20:9, 20:16, 23:17,
23:19, 24:9, 28:21,
29:12, 30:2, 32:19,
40:2, 43:20, 44:2,
45:13, 51:14
**issued** [6] - 19:1,
21:22, 38:1, 38:5,
51:21, 51:24
**issues** [9] - 17:20,
19:14, 32:3, 43:20,
44:14, 44:16, 45:3,
47:24, 52:10

### J

**James** [2] - 4:12,
17:8
**January** [2] - 5:22,
7:2
**Jeremy** [1] - 4:19
**job** [3] - 34:25, 35:5,
35:14

**Jodi** [1] - 14:25
**joined** [1] - 52:25
**jointly** [1] - 25:6
**Jonathan** [2] - 4:10,
45:22
**Jones** [3] - 19:5,
28:1, 28:3
**Judge** [1] - 38:24
**judge** [8] - 52:8,
52:9, 52:13, 52:15,
52:18, 52:23, 54:3,
54:12
**judges** [4] - 52:24,
52:25, 53:2, 53:18
**judgment** [13] - 5:4,
5:12, 5:16, 12:2,
17:18, 35:23, 36:4,
37:9, 40:3, 40:8, 41:7,
44:2, 45:17
**JUDGMENT** [2] - 3:3,
5:2
**July** [1] - 55:9
**jump** [1] - 45:23
**jumped** [1] - 17:4
**justify** [1] - 42:19

### K

**keep** [1] - 41:17
**keeping** [1] - 48:12
**kept** [1] - 11:2
**key** [4] - 26:5, 40:22,
46:19, 46:23
**Kimberly** [2] - 4:4,
55:7
**kind** [2] - 13:22,
40:12
**kinds** [1] - 40:13
**knowing** [8] - 25:3,
25:17, 25:22, 26:3,
26:18, 28:15, 35:3,
47:6
**knowingly** [3] -
15:23, 16:24, 25:5
**knowledge** [10] -
5:18, 18:21, 19:25,
20:2, 20:6, 26:12,
28:11, 32:22, 35:3,
40:24
**known** [3] - 10:25,
48:23, 48:25
**knows** [2] - 47:13,
47:15

### L

**laid** [3] - 29:18, 40:5,
44:7
**language** [1] - 38:25
**large** [3] - 42:14,

42:17, 43:7
**lastly** [1] - 28:24
**late** [2] - 17:6, 52:21
**law** [8] - 8:2, 10:16,
19:8, 21:1, 23:4,
25:19, 33:11, 40:3
**lawsuit** [1] - 44:17
**learned** [6] - 7:4, 7:6,
7:10, 7:14, 14:25,
15:8
**least** [8] - 24:15,
26:24, 27:2, 40:11,
45:10, 46:16, 47:2,
47:7
**led** [2] - 5:18, 9:2
**left** [4] - 4:19, 4:20,
14:1
**legal** [2] - 17:23,
28:14
**legally** [2] - 48:2,
48:16
**letter** [5] - 19:17,
20:5, 22:18, 34:9,
35:1
**letters** [1] - 19:16
**level** [10] - 10:5,
23:20, 31:2, 31:24,
32:22, 36:21, 36:23,
37:1, 37:16
**levels** [1] - 36:18
**Lewis** [6] - 4:20, 8:9,
9:11, 14:5, 18:16,
39:19
**liability** [2] - 38:18,
41:5
**liable** [3] - 15:22,
16:18, 25:6
**licensed** [1] - 38:4
**licenses** [1] - 13:2
**lie** [1] - 17:18
**life** [13] - 6:3, 6:11,
6:13, 10:10, 10:23,
24:8, 36:9, 42:6, 46:3,
47:14, 48:22, 49:7,
50:3
**Life** [6] - 4:17, 36:3,
36:10, 38:7, 38:14,
39:2
**light** [1] - 45:17
**likewise** [1] - 9:13
**limit** [1] - 35:7
**limited** [5] - 6:8,
8:23, 26:6, 26:23,
27:17
**limiting** [1] - 24:16
**LINA** [4] - 4:18,
5:10, 5:12, 6:6, 7:4,
7:22, 8:3, 9:1, 9:12,
9:18, 9:21, 10:1, 10:4,
11:18, 12:6, 12:11,

13:2, 13:7, 13:21,
14:13, 14:21, 15:7,
15:20, 16:21, 17:24,
18:20, 20:5, 20:7,
20:10, 31:20, 33:5,
34:3, 34:12, 34:24,
35:17, 35:23, 36:23,
37:7, 37:13, 39:12,
40:11, 41:2, 42:6,
44:2, 44:19, 49:1
**LINA's** [3] - 8:22,
14:24, 15:6
**line** [2] - 18:24, 26:15
**list** [3] - 9:23, 11:19,
21:21
**litigating** [1] - 14:17
**lived** [1] - 48:22
**LLC** [1] - 38:1
**LLP** [1] - 4:10
**loathe** [1] - 16:14
**Loo** [4] - 8:10, 14:5,
18:15, 39:25
**look** [8] - 8:11,
25:16, 29:2, 29:9,
31:9, 40:13, 51:25,
54:6
**looked** [1] - 9:16
**looking** [2] - 50:4,
50:6
**looks** [1] - 28:25
**lower** [1] - 35:10
**luck** [1] - 13:25
**lump** [1] - 18:23

## M

**machine** [2] - 55:5,
55:12
**magistrate** [9] - 52:8,
52:9, 52:13, 52:15,
52:23, 52:24, 53:18,
54:3, 54:12
**mail** [5] - 34:16,
34:18, 34:24, 46:12,
46:21
**maintaining** [1] -
22:1
**man** [1] - 50:7
**manage** [2] - 44:16,
49:21
**manageability** [1] -
44:16
**management** [3] -
23:13, 30:5, 32:21
**manner** [2] - 23:18,
27:15
**manual** [10] - 7:17,
12:23, 22:6, 22:7,
23:22, 24:10, 30:6,
34:1, 34:9

**March** [1] - 46:12
**mark** [2] - 13:1, 38:4
**Maryland** [1] - 55:5
**material** [5] - 17:20,
23:17, 28:22, 30:2,
40:2
**matter** [3] - 4:3, 4:5,
40:3
**McCravy** [5] - 48:4,
48:6, 48:13, 49:19,
50:1
**mean** [7] - 12:14,
19:3, 19:22, 19:24,
22:1, 27:25, 30:2
**means** [2] - 9:1,
53:16
**meant** [2] - 8:16,
8:24
**mechanism** [2] -
49:4, 49:11
**mediation** [11] -
52:6, 53:4, 53:6, 53:7,
53:14, 53:15, 53:18,
53:20, 53:25, 54:11
**medical** [9] - 22:12,
22:14, 22:19, 22:21,
44:3, 44:4, 44:18,
44:21, 47:24
**medically** [1] - 48:14
**member** [1] - 48:15
**mentioned** [6] - 8:22,
9:4, 13:10, 15:2,
34:14, 38:21
**mentions** [1] - 46:24
**mere** [1] - 14:18
**merely** [6] - 8:23,
9:6, 10:19, 11:5, 14:8,
49:23
**merit** [1] - 53:1
**messed** [1] - 35:12
**messes** [1] - 13:21
**mic** [1] - 5:9
**Middle** [1] - 25:15
**might** [7] - 22:24,
28:1, 28:19, 32:2,
40:7, 51:5, 51:7
**Miller** [1] - 4:13
**minimal** [1] - 23:2
**minimum** [1] - 22:22
**misapprehended** [1]
- 11:17
**missing** [2] - 22:17,
22:18, 51:16
**mistake** [1] - 18:25
**mistakes** [1] - 35:15
**moment** [2] - 13:8,
21:5
**money** [1] - 18:23
**month** [2] - 11:13,
35:19

**months** [10] - 5:22,
6:23, 7:2, 7:3, 7:15,
11:11, 26:10, 34:20,
50:7, 54:3
**Moon** [6] - 10:17,
11:9, 18:15, 20:15,
33:13, 39:21
**Morehead** [4] -
14:25, 22:5, 23:23,
35:16
**Morgan** [1] - 4:20
**morning** [11] - 4:9,
4:14, 4:15, 4:16, 4:22,
4:23, 4:24, 5:6, 17:8,
41:15, 52:21
**most** [2] - 28:24,
48:20
**MOTION** [4] - 3:3,
3:8, 5:2, 41:9
**motion** [20] - 5:4,
6:14, 17:10, 36:4,
37:9, 40:8, 40:21,
41:6, 41:8, 41:11,
42:2, 45:6, 45:23,
50:19, 50:21, 50:23,
50:25, 51:6, 51:10,
51:12
**motions** [4] - 4:6,
5:3, 36:2, 55:7
**Motors** [1] - 37:24
**move** [1] - 41:24
**moving** [2] - 25:2,
53:23
**MR** [54] - 4:9, 4:15,
4:16, 4:23, 4:24, 5:6,
5:10, 5:11, 10:9,
12:12, 12:19, 12:24,
15:14, 15:18, 17:3,
17:7, 17:8, 17:25,
18:5, 18:13, 19:7,
19:12, 19:25, 20:9,
21:7, 22:4, 24:2, 24:5,
24:8, 26:22, 28:7,
29:4, 29:24, 30:4,
30:11, 30:15, 31:6,
31:13, 32:5, 32:11,
33:4, 33:6, 33:10,
33:25, 41:13, 41:15,
41:22, 42:23, 43:10,
45:21, 45:22, 49:16,
49:18, 51:18
**multiple** [1] - 21:4
**multiples** [1] - 21:19
**must** [1] - 29:9

## N

**nail** [1] - 34:2
**name** [3] - 19:17,
38:4, 55:13

**named** [1] - 12:13
**names** [1] - 19:23
**Nationwide** [4] -
29:6, 29:8, 29:10,
39:2
**near** [1] - 5:9
**necessary** [2] - 29:8,
29:14
**need** [10] - 5:8, 18:2,
27:23, 28:3, 29:23,
30:1, 47:4, 49:4,
51:18, 54:1
**needed** [1] - 6:19
**never** [16] - 7:10, 8:1,
9:3, 27:24, 30:9,
30:12, 31:19, 31:20,
32:1, 34:5, 48:22,
48:24, 53:17, 53:18
**new** [1] - 16:15
**nine** [1] - 52:20
**nobody** [2] - 14:1,
14:14
**nondescript** [1] -
23:2
**none** [1] - 18:15
**nonfiduciary** [3] -
16:18, 25:5, 40:23
**noon** [1] - 54:14
**North** [6] - 4:18,
25:15, 36:4, 36:11,
38:8, 38:14
**note** [3] - 21:2,
46:19, 46:23
**noted** [1] - 35:2
**notes** [1] - 55:12
**nothing** [9] - 8:6,
29:6, 39:10, 39:14,
48:25, 49:19, 49:20,
50:16, 51:4
**notice** [1] - 28:3
**notifications** [1] -
29:11
**notified** [1] - 7:24
**notifying** [2] - 8:18,
9:7
**notion** [2] - 16:18,
23:3
**notwithstanding** [1]
- 35:14
**number** [8] - 4:4,
23:16, 42:14, 42:17,
46:20, 46:21, 51:10,
55:8
**numerosity** [2] -
42:20, 45:3

## O

**o'clock** [1] - 52:20
**obligation** [1] - 9:23

**observed** [1] - 39:2
**obtain** [2] - 22:17,
22:18
**obvious** [1] - 40:16
**obviously** [4] - 7:19,
16:13, 36:13, 43:19
**occur** [2] - 27:19,
28:17
**occurred** [1] - 35:18
**occurrence** [2] -
43:6, 43:8
**occurring** [1] - 27:19
**October** [1] - 7:1
**OF** [2] - 17:7, 55:1
**offer** [1] - 34:21
**OFFICIAL** [2] - 55:1,
55:21
**Official** [1] - 55:3
**official** [2] - 55:6,
55:11
**Oil** [7] - 5:1, 36:8,
37:4, 37:5, 41:10,
50:18, 51:15
**old** [1] - 19:22
**ON** [1] - 17:7
**once** [2] - 10:10,
22:10
**One** [4] - 5:15, 7:19,
14:23, 15:9, 17:17,
32:25, 35:23, 38:11,
38:23, 39:18, 40:1
**one** [22] - 8:6, 13:5,
17:15, 19:7, 19:15,
22:15, 22:24, 26:8,
26:22, 26:24, 27:2,
35:11, 36:2, 39:1,
40:11, 43:22, 45:10,
46:11, 46:20, 52:5,
52:23, 52:24
**online** [1] - 34:21
**open** [1] - 20:9
**opening** [1] - 13:4
**Operating** [1] - 39:25
**operating** [2] - 32:14
**opinions** [1] - 38:25
**OPIS** [7] - 3:9, 3:11,
6:24, 7:21, 41:14,
41:16, 49:17
**opportunity** [3] -
19:14, 29:24, 31:20
**opposed** [3] - 18:7,
26:10, 52:9
**opposition** [6] -
11:13, 11:14, 12:1,
34:17, 50:21, 51:12
**oral** [1] - 37:24
**order** [10] - 4:2, 6:19,
51:16, 51:19, 51:20,
51:24, 51:25, 52:5,
53:15, 54:6

**originally** [1] - 35:22
**ought** [1] - 35:6
**overpaid** [1] - 46:3
**overpayments** [1] -
15:1
**owed** [1] - 25:24
**own** [1] - 50:14

**P**

**page** [3] - 22:6, 22:8,
24:5
**pages** [1] - 55:10
**paid** [5] - 6:12, 7:15,
11:11, 11:16, 48:23
**panels** [1] - 53:1
**papers** [3] - 12:15,
37:8, 53:9
**Pardon** [1] - 30:11
**parent** [6] - 7:22,
12:9, 12:10, 13:6,
37:25, 42:12
**part** [1] - 52:8
**participant** [2] -
5:25, 10:20
**participants** [2] -
8:25, 9:7
**participated** [3] -
15:23, 16:24, 25:5
**participation** [6] -
25:3, 25:17, 25:22,
26:4, 26:18, 35:3
**particular** [8] - 5:14,
16:1, 17:9, 31:22,
33:7, 36:18, 43:24,
46:9
**particularly** [2] -
11:7, 39:7
**parties** [3] - 38:21,
51:25, 53:25
**party** [5] - 15:5, 16:6,
16:10, 35:9, 51:11
**passed** [2] - 7:1,
35:19
**past** [2] - 20:5, 26:21
**pay** [4] - 7:25, 10:24,
20:14, 49:6
**paychecks** [3] - 47:6,
47:13, 49:6
**paying** [6] - 5:19,
9:8, 11:23, 33:23,
47:25, 49:24
**payment** [9] - 10:11,
10:13, 10:14, 10:15,
11:21, 13:18, 21:6,
22:3, 48:8
**payments** [4] -
14:16, 14:19, 20:17,
35:20
**payouts** [1] - 20:3

**payroll** [2] - 8:21,
21:21
**pays** [1] - 11:22
**pending** [3] - 4:3,
5:21, 50:12
**Pension** [1] - 25:14
**people** [17] - 19:22,
36:16, 42:17, 43:16,
43:18, 46:2, 47:12,
47:15, 47:20, 47:21,
48:2, 48:20, 49:2,
49:3, 49:5, 49:10,
51:2
**Perez** [4] - 20:11,
20:12, 23:4, 33:24
**perhaps** [1] - 28:24
**period** [3] - 27:12,
35:20, 48:12
**permission** [1] -
41:17
**person** [6] - 19:18,
21:18, 30:13, 31:9,
37:17, 40:11
**personal** [1] - 22:19
**persons** [1] - 42:25
**perspective** [1] -
28:14
**pertain** [1] - 24:17
**Phelps** [1] - 23:5
**Phones** [1] - 25:8
**picked** [1] - 53:1
**picture** [1] - 6:6
**place** [9] - 27:6,
27:24, 28:4, 28:16,
28:17, 37:18, 38:9,
43:7, 47:3
**placed** [1] - 36:16
**places** [1] - 39:8
**plaintiff** [20] - 6:22,
15:13, 17:2, 17:9,
18:17, 19:8, 23:16,
25:13, 25:24, 26:2,
29:13, 29:24, 37:18,
38:13, 38:20, 40:10,
42:2, 43:15, 45:20,
48:8
**Plaintiff** [2] - 3:5,
3:10
**PLAINTIFF** [2] -
17:7, 45:21
**plaintiff's** [7] - 10:3,
11:12, 13:14, 13:19,
13:22, 34:16, 44:9
**plaintiffs** [7] - 4:10,
10:10, 15:19, 33:18,
42:12, 43:4, 45:8
**plan** [64] - 5:19, 6:1,
6:3, 6:5, 6:8, 6:10,
6:11, 6:18, 6:25, 7:7,
7:13, 7:17, 7:25, 8:12,

8:13, 8:14, 8:15, 8:17,
9:6, 10:12, 11:7,
11:25, 13:15, 14:10,
14:20, 15:4, 16:11,
17:13, 18:7, 18:19,
20:13, 20:19, 20:22,
21:25, 23:6, 23:13,
23:14, 29:2, 29:19,
29:25, 30:4, 30:16,
30:18, 31:22, 32:8,
32:12, 32:17, 32:20,
33:14, 33:22, 34:23,
34:25, 36:9, 36:11,
36:14, 36:16, 36:18,
36:21, 37:8, 37:23,
38:8, 39:9
**plans** [3] - 22:8,
24:13, 26:24
**play** [2] - 31:16,
31:17
**played** [1] - 32:7
**playing** [1] - 29:1
**plead** [1] - 42:3
**pleadings** [1] - 42:1
**Plus** [1] - 25:8
**point** [17] - 13:9,
17:11, 17:14, 19:7,
20:15, 21:10, 22:4,
23:8, 25:8, 29:5,
34:15, 41:23, 46:9,
48:17, 49:13
**pointed** [2] - 23:16,
37:23
**points** [3] - 25:13,
25:20, 33:7
**policies** [2] - 27:6,
32:5
**policy** [10] - 6:7,
20:3, 20:17, 21:22,
23:7, 23:19, 28:8,
44:21, 48:20
**portal** [1] - 34:21
**position** [2] - 19:3,
47:12, 47:20
**possessed** [1] - 29:8
**possibility** [1] - 40:6
**possibly** [1] - 51:8
**potential** [5] - 28:8,
28:11, 32:2, 43:24,
44:11
**potentially** [2] -
43:14, 50:8
**practical** [1] - 13:13
**precedent** [1] - 25:21
**precepts** [1] - 25:19
**predate** [1] - 27:1
**predicate** [1] - 21:8
**predicated** [1] - 45:6
**predominance** [1] -
44:16, 47:23

**preemptive** [1] -
50:23
**preemptively** [1] -
41:24
**prejudice** [1] - 51:11
**prejudicial** [1] -
29:13
**premature** [1] -
50:25
**premised** [1] - 38:15
**premium** [12] - 10:5,
10:11, 11:21, 13:18,
14:16, 14:18, 15:1,
20:7, 35:20, 37:6,
38:16, 50:5
**premiums** [56] -
5:19, 7:15, 7:16, 7:25,
8:20, 9:9, 9:18, 10:11,
10:19, 10:25, 11:1,
11:2, 11:4, 11:6,
11:11, 11:18, 12:4,
12:7, 13:17, 14:13,
18:7, 18:9, 18:14,
18:18, 18:19, 18:23,
18:25, 19:20, 20:14,
21:13, 21:24, 23:4,
23:6, 27:10, 27:16,
28:5, 28:11, 28:12,
29:22, 32:13, 32:20,
33:11, 33:15, 35:10,
37:14, 37:15, 41:3,
47:5, 47:14, 47:25,
48:12, 48:23, 48:25,
49:1, 49:5, 49:24
**prepare** [1] - 34:16
**prepared** [1] - 51:6
**presumably** [1] -
47:15
**presupposes** [1] -
15:20
**Price** [7] - 5:1, 36:8,
37:4, 37:5, 41:11,
50:18, 51:15
**prima** [1] - 42:3
**primarily** [1] - 38:15
**primary** [3] - 8:11,
43:22, 44:14
**principal** [1] - 52:15
**problem** [1] - 31:12
**problems** [3] - 52:1,
52:2, 54:7
**procedure** [2] - 28:8,
47:3
**procedures** [6] -
27:6, 27:24, 28:3,
28:17, 32:5, 35:6
**proceed** [1] - 5:5
**proceeding** [1] -
53:9
**proceedings** [3] -

52:7, 55:6, 55:11
**process** [6] - 9:17,
14:2, 34:2, 34:4,
34:13, 34:21
**processing** [4] -
8:16, 22:10, 22:11,
22:14
**product** [1] - 12:16
**products** [1] - 38:5
**profit** [2] - 21:12,
32:14
**prohibited** [2] - 16:6,
16:11
**project** [1] - 52:20
**proper** [1] - 40:4
**properly** [4] - 9:24,
9:25, 39:13, 51:6
**proposition** [2] -
10:16, 18:14
**protect** [1] - 48:23
**protection** [2] - 49:4,
49:10
**prove** [1] - 43:25
**provide** [3] - 34:9,
35:10, 49:9
**provided** [6] - 6:7,
31:15, 31:16, 38:17,
46:14, 48:5
**provides** [1] - 23:11
**providing** [2] -
24:23, 36:13
**provisions** [1] - 39:9
**purchased** [1] - 49:8
**purpose** [1] - 33:22
**purposes** [2] - 6:9,
15:5
**pursuant** [1] - 7:5
**purview** [1] - 23:1
**push** [1] - 53:7
**put** [5] - 27:6, 27:23,
28:3, 28:16
**putative** [1] - 43:11
**puts** [1] - 28:3
**putting** [2] - 18:17,
46:5

**Q**

**quality** [1] - 12:16
**questions** [7] -
22:14, 22:19, 24:9,
28:18, 33:8, 49:12,
50:15
**quickly** [2] - 45:23,
47:20

**R**

**Rainey** [1] - 18:16
**raised** [3] - 13:9,

21:9, 44:4
**rather** [2] - 42:4,
42:19
**reached** [2] - 39:20,
54:9
**reaching** [1] - 39:24
**read** [2] - 12:25,
23:23
**real** [1] - 38:7
**really** [9] - 27:21,
42:17, 45:12, 48:6,
48:13, 48:23, 49:3,
49:9, 50:4
**reason** [1] - 45:1
**reasonable** [1] - 47:7
**reasons** [5] - 15:9,
17:18, 35:2, 35:21,
38:19
**Rebuttal** [2] - 3:6,
3:11
**REBUTTAL** [1] - 33:4
**receipt** [1] - 23:2
**received** [5] - 7:6,
10:4, 16:11, 18:14,
46:12
**receives** [5] - 10:11,
11:18, 11:23, 22:10
**receiving** [4] - 26:11,
27:3, 28:12, 28:15
**recently** [1] - 52:25
**recipient** [1] - 11:7
**recognize** [1] - 16:15
**recognized** [4] -
9:16, 13:11, 16:1,
16:8
**recognizes** [1] - 16:3
**record** [14] - 4:7,
5:17, 12:6, 19:9,
19:11, 22:2, 23:23,
26:6, 27:17, 32:23,
34:7, 46:5, 46:10,
47:8
**recordkeeping** [1] -
22:25
**recovery** [1] - 39:3
**reduced** [1] - 49:6
**reenforces** [1] - 15:3
**refer** [2] - 4:18, 41:18
**referenced** [1] -
19:15
**references** [1] - 25:9
**referring** [1] - 23:25
**reflect** [1] - 20:6
**reflected** [1] - 34:22
**reflecting** [1] - 14:23
**regard** [1] - 29:22
**regarding** [3] -
17:20, 19:16, 32:12
**registered** [1] - 13:1
**regulatory** [1] -

21:12
**rejected** [3] - 16:17,
33:17, 39:1
**relate** [1] - 36:7
**relates** [3] - 26:24,
32:21, 32:22
**relating** [1] - 46:14
**relationship** [1] -
27:14
**relatively** [3] - 6:2,
47:11, 47:19
**relied** [1] - 20:16
**relief** [1] - 43:9
**rely** [2] - 13:20, 50:5
**reminds** [1] - 52:19
**remit** [2] - 14:16,
37:13
**remitted** [3] - 20:14,
21:6, 37:7
**remitting** [1] - 9:18
**removed** [1] - 13:6
**render** [1] - 29:9
**repeats** [1] - 42:8
**reply** [2] - 49:19,
50:22
**reported** [1] - 55:5
**REPORTER** [2] -
55:1, 55:21
**Reporter** [1] - 55:3
**reporting** [1] - 21:13
**representations** [1] -
19:9
**representative** [1] -
22:17
**represents** [1] -
11:21
**request** [1] - 22:16
**requested** [4] - 7:6,
7:8, 22:13, 22:21
**require** [3] - 28:4,
39:4, 47:24
**required** [5] - 22:13,
36:22, 37:1, 45:9,
48:14
**requirement** [3] -
7:24, 8:18, 44:10
**requirements** [3] -
21:13, 24:24, 45:8
**requires** [1] - 21:20,
31:3, 52:10
**respect** [29] - 5:14,
5:16, 10:15, 15:18,
17:12, 17:17, 17:24,
18:6, 18:18, 20:6,
20:17, 21:17, 24:25,
25:13, 27:14, 27:15,
28:10, 30:4, 30:8,
30:17, 30:18, 32:11,
33:10, 33:18, 38:17,
40:1, 41:6, 41:11,

51:15
**respecting** [1] -
23:13
**response** [1] - 49:22
**responsibilities** [8] -
8:4, 14:19, 23:21,
29:7, 30:17, 31:1,
32:8, 37:10
**responsibility** [8] -
8:15, 10:21, 11:6,
13:16, 15:4, 24:14,
24:15, 33:12
**responsible** [16] -
8:16, 9:7, 9:10, 9:17,
9:19, 9:21, 11:15,
13:20, 14:8, 14:10,
14:15, 14:21, 15:5,
34:23, 35:5, 35:9
**restitution** [1] -
16:10
**result** [6] - 10:6,
16:11, 37:18, 39:20,
41:8, 42:14
**resulting** [1] - 38:18
**retained** [1] - 49:1
**retaining** [1] - 10:19,
48:12
**retention** [1] - 38:15
**retired** [1] - 48:22
**return** [1] - 50:5
**returning** [1] - 13:8
**review** [3] - 22:12,
34:2, 39:15
**reviewable** [1] -
39:14
**reviewed** [1] - 37:11
**reviewing** [1] - 6:9
**rewrite** [1] - 39:4
**ripe** [1] - 53:5
**rise** [4] - 14:22, 18:8,
20:23, 23:21
**risk** [2] - 31:5, 31:11
**role** [20] - 6:8, 8:22,
15:6, 22:7, 24:11,
24:16, 29:1, 29:19,
30:9, 30:12, 31:16,
31:17, 32:2, 32:7,
32:20, 35:7, 36:14,
36:15, 37:23, 39:12
**rooted** [1] - 25:19
**rose** [1] - 23:20
**Ross** [1] - 25:14
**RPR** [1] - 55:20
**rule** [1] - 38:19
**Rule** [3] - 40:5,
41:24, 45:8
**rules** [1] - 13:11
**Ruling** [2] - 3:7, 3:12
**RULING** [2] - 35:25,
50:17

**ruling** [1] - 45:17,
48:14
**rulings** [1] - 38:20
**run** [1] - 21:15
**running** [1] - 52:21
**RWT-16-238** [1] - 4:4

## S

**Salomon** [1] - 16:9
**satisfy** [2] - 8:19,
44:9
**save** [1] - 51:23
**scale** [1] - 43:7
**scenario** [1] - 9:12
**schedule** [1] - 54:2
**scheduling** [5] -
51:16, 51:19, 51:20,
51:24, 52:5
**scope** [1] - 43:13
**seats** [1] - 4:11
**Second** [1] - 25:9
**second** [6] - 26:3,
36:2, 40:22, 47:10,
52:6, 53:4
**secondarily** [1] -
23:11
**secret** [1] - 34:3
**Section** [4] - 16:5,
23:11, 28:21, 32:12
**see** [10] - 8:11,
10:11, 12:19, 12:20,
12:22, 28:9, 29:10,
38:3, 38:6, 40:14
**seem** [1] - 47:1
**Self** [1] - 34:22
**self** [2] - 6:5, 37:13
**self-administered**
[1] - 6:5
**self-billing** [1] -
37:13
**Self-Service** [1] -
34:22
**send** [4] - 19:23,
22:18, 22:20, 54:8
**sending** [1] - 34:24
**sends** [1] - 31:9
**senior** [1] - 52:18
**sent** [2] - 20:5, 34:17
**sentencing** [1] - 17:6
**separate** [5] - 12:11,
12:16, 22:2, 44:11,
50:20
**separately** [1] - 12:8
**serious** [1] - 52:22
**serve** [2] - 22:7,
24:11
**served** [2] - 6:8, 8:23
**Service** [1] - 34:22
**Services** [6] - 5:1,

36:8, 37:4, 37:6,
50:19, 51:15
**set** [8] - 7:13, 16:15,
16:19, 30:2, 36:10,
36:16, 49:2, 49:19
**settled** [1] - 17:14
**seven** [4] - 5:21,
6:23, 26:10, 50:7
**sever** [1] - 50:20
**severability** [1] -
45:18
**several** [5] - 7:2,
13:10, 15:3, 38:22,
50:2
**severally** [1] - 25:6
**Shah** [4] - 3:5, 4:12,
4:13, 17:8
**SHAH** [26] - 4:15,
17:7, 17:8, 17:25,
18:5, 18:13, 19:7,
19:12, 19:25, 20:9,
21:7, 22:4, 24:2, 24:5,
24:8, 26:22, 28:7,
29:4, 29:24, 30:4,
30:11, 30:15, 31:6,
31:13, 32:5, 32:11
**Shepherd** [1] - 4:12
**short** [1] - 41:18
**shorthand** [2] - 55:6,
55:12
**shortly** [1] - 36:2
**show** [8] - 11:9,
26:12, 26:14, 26:18,
26:21, 44:1, 45:9,
46:10
**shows** [4] - 5:17,
26:22, 34:17, 43:4
**side** [1] - 27:8
**sides** [1] - 52:10
**significant** [1] - 28:4
**signing** [1] - 30:23
**similar** [9] - 9:12,
10:18, 16:4, 20:5,
39:1, 51:13
**simple** [1] - 53:10
**simply** [20] - 9:1,
9:21, 13:19, 14:21,
15:11, 16:22, 23:2,
25:4, 26:20, 35:17,
40:5, 40:19, 40:25,
43:8, 45:11, 47:3,
48:15, 50:13, 53:19,
54:1
**single** [3] - 5:25,
11:21, 32:19
**sitting** [2] - 4:11,
49:6
**situation** [6] - 12:17,
16:5, 30:22, 46:8,
50:5, 50:6

**six** [3] - 7:15, 11:11, 35:19
**six-month** [1] - 35:19
**slip** [1] - 43:6
**slip-up** [1] - 43:6
**slipup** [1] - 37:3
**sloppy** [1] - 42:16
**slowing** [1] - 52:18
**Smith** [3] - 16:9, 28:1, 28:2
**someone** [1] - 49:22
**somewhat** [1] - 48:18
**somewhere** [4] - 12:15, 18:24, 26:15, 26:20
**sorry** [2] - 15:16, 24:2
**sort** [6] - 6:17, 12:14, 27:21, 37:24, 46:15, 48:1
**sorts** [1] - 29:11
**sought** [1] - 7:12
**Southern** [1] - 55:4
**speaks** [5] - 19:25, 20:1, 20:2, 20:4, 20:9
**specific** [4] - 11:24, 21:1, 21:3, 28:11
**specifically** [3] - 19:12, 23:24, 29:6
**speed** [1] - 52:22
**spend** [1] - 53:22
**spending** [1] - 53:8
**sponsored** [1] - 6:3
**spouses** [1] - 49:8
**squarely** [2] - 16:17, 33:17
**stage** [4] - 17:19, 32:1, 42:22, 45:2
**stand** [2] - 5:6, 18:14
**standard** [2] - 8:5, 27:22
**standards** [1] - 39:15
**standpoint** [2] - 21:10, 21:11
**start** [2] - 29:2, 29:3
**started** [2] - 17:5, 34:19
**starting** [3] - 17:11, 17:13, 29:5
**starts** [1] - 42:7
**state** [2] - 23:5, 30:7
**States** [1] - 55:4
**states** [1] - 22:10
**stating** [2] - 22:23, 42:7
**status** [3] - 11:20, 18:4, 23:12
**statute** [1] - 16:16

**Stephen** [2] - 36:7, 53:13
**steps** [1] - 13:6
**Steve** [2] - 4:24, 41:15
**still** [6] - 11:3, 15:22, 26:1, 35:8, 43:18, 48:20
**stop** [2] - 49:12, 50:24
**stopped** [1] - 9:8
**story** [1] - 14:11
**straightforward** [1] - 6:2
**Stuart** [1] - 4:21
**submit** [6] - 6:19, 14:18, 14:20, 34:8, 34:11, 47:4
**submits** [1] - 13:17
**submitted** [23] - 6:9, 7:3, 7:10, 12:1, 12:7, 15:1, 18:21, 19:2, 29:17, 31:25, 34:5, 34:17, 36:23, 36:24, 37:2, 37:3, 37:17, 39:12, 44:10, 44:20, 47:6, 47:15, 50:8
**submitting** [1] - 6:16
**subscribed** [1] - 55:13
**subsection** [1] - 45:10
**subsections** [1] - 45:10
**subsidiaries** [1] - 6:5
**subsidiary** [2] - 6:24, 36:10
**successfully** [1] - 37:17
**sue** [1] - 42:20
**suffer** [1] - 31:10
**sufficient** [4] - 40:15, 40:20, 42:3, 45:9
**suggest** [4] - 23:17, 39:10, 42:24, 49:20
**suggesting** [3] - 13:14, 14:13, 46:2
**suggests** [4] - 13:14, 13:22, 30:6, 40:10
**suit** [1] - 7:19
**sum** [1] - 18:23
**SUMMARY** [2] - 3:3, 5:2
**summary** [9] - 5:4, 5:12, 12:2, 17:18, 36:4, 37:9, 40:8, 44:2, 45:17
**supplemental** [4] - 24:8, 26:17, 46:3, 47:14

**support** [1] - 40:7
**supports** [1] - 10:16
**supposed** [5] - 13:11, 21:24, 31:15, 34:9, 34:11
**supposedly** [1] - 49:24
**Supreme** [3] - 16:3, 16:8, 25:20
**surprised** [1] - 47:17
**suspicious** [1] - 40:6
**sweeping** [1] - 32:13
**sympathy** [2] - 38:19, 38:20
**system** [1] - 22:3

## T

**talks** [3] - 22:9, 24:8, 25:18
**teaches** [1] - 8:3
**teaching** [2] - 48:6, 48:13
**team** [4] - 22:10, 22:12, 22:14, 22:20
**Technologies** [1] - 39:21
**tempted** [1] - 38:19
**terminated** [2] - 7:1, 10:24
**terms** [7] - 29:20, 30:22, 31:13, 34:14, 35:1, 39:6, 47:10
**test** [7] - 17:16, 19:9, 19:14, 28:24, 29:12, 29:14, 29:25
**testimony** [1] - 14:24
**testing** [1] - 30:1
**tethered** [2] - 20:3, 23:7
**THE** [52] - 4:3, 4:14, 4:22, 5:3, 5:8, 10:3, 12:8, 12:14, 12:22, 15:12, 15:16, 17:1, 17:4, 17:7, 17:23, 18:1, 18:11, 18:20, 19:10, 19:21, 20:4, 21:3, 21:17, 23:25, 24:4, 24:7, 26:12, 27:21, 29:2, 29:16, 30:1, 30:9, 30:12, 30:21, 31:9, 31:18, 32:10, 33:3, 33:9, 33:23, 35:25, 36:1, 41:10, 41:21, 42:11, 43:1, 45:19, 45:21, 49:14, 50:17, 50:18, 51:20
**theme** [1] - 42:9
**themselves** [2] -

10:12, 27:16
**theories** [1] - 39:3
**theory** [10] - 7:20, 13:14, 13:19, 15:19, 16:4, 16:20, 16:24, 27:25, 38:11, 48:10
**therefore** [3] - 10:6, 28:1, 45:15
**they've** [6] - 12:12, 29:18, 29:19, 29:21, 31:10, 53:2
**Third** [2] - 16:17, 25:11
**thousand** [1] - 51:4
**thousands** [1] - 35:13
**three** [6] - 22:18, 25:23, 39:3, 45:24, 51:2, 54:3
**threshold** [1] - 21:20
**throated** [2] - 40:8, 40:16
**throughout** [1] - 42:9
**timeline** [1] - 22:10
**today** [8] - 4:19, 5:4, 14:4, 36:1, 40:18, 48:18, 49:7, 53:9
**took** [2] - 33:21, 37:18
**totally** [1] - 40:25
**towards** [1] - 46:9
**traditional** [1] - 39:15
**transaction** [3] - 16:6, 16:12, 24:19
**transcript** [1] - 55:11
**transforms** [1] - 13:21
**treated** [2] - 18:10, 32:20
**treating** [1] - 32:15
**treatment** [2] - 18:18, 42:19
**trial** [1] - 52:13
**tried** [1] - 14:16
**trigger** [5] - 10:21, 11:6, 12:4, 14:19, 20:20
**triggered** [1] - 43:21
**triggers** [1] - 33:12
**true** [1] - 45:3
**Trust** [1] - 16:9
**trust** [1] - 25:19
**try** [5] - 31:8, 38:19, 52:3, 53:7, 54:9
**trying** [3] - 24:18, 27:21, 44:19
**turn** [1] - 22:1
**Two** [10] - 5:17, 15:15, 15:18, 28:23,

32:22, 32:25, 35:1, 35:24, 38:12, 41:7
**two** [18] - 4:11, 4:17, 4:25, 5:3, 5:13, 6:11, 6:15, 13:5, 13:6, 17:17, 19:9, 22:16, 28:20, 36:1, 37:19, 46:9, 46:19, 51:2
**tycko** [1] - 3:10
**TYCKO** [4] - 4:9, 45:21, 45:22, 51:18
**Tycko** [4] - 4:10, 45:22
**Tycko's** [1] - 12:1
**type** [6] - 21:22, 22:23, 27:18, 39:23, 39:24, 42:25
**types** [3] - 27:10, 27:16, 37:19
**typical** [1] - 42:18
**typicality** [2] - 42:21, 43:23

## U

**UCG** [38] - 3:9, 3:11, 4:25, 6:4, 6:5, 6:12, 6:25, 7:7, 7:17, 7:21, 8:14, 8:16, 11:14, 14:1, 15:5, 16:25, 23:2, 34:8, 34:10, 34:15, 34:17, 34:24, 35:18, 41:14, 41:16, 41:18, 42:1, 42:4, 42:13, 42:16, 43:13, 46:11, 46:13, 46:15, 47:2, 47:13, 47:15, 49:17
**UCG's** [1] - 47:17
**Ulery** [1] - 20:12
**ultimately** [3] - 25:25, 43:25, 51:5
**umbrella** [1] - 16:15
**unaffiliated** [1] - 28:12
**unapplied** [4] - 18:6, 18:18, 19:20, 27:3
**unaware** [1] - 49:24
**unclear** [1] - 34:7
**under** [45] - 6:1, 6:9, 7:23, 7:25, 9:6, 12:11, 13:18, 13:22, 15:22, 16:5, 16:7, 17:13, 17:16, 17:21, 22:9, 23:4, 23:11, 25:7, 28:20, 28:25, 30:16, 32:12, 32:24, 36:14, 36:18, 36:21, 37:23, 38:8, 38:11, 38:18, 38:23, 39:6, 39:15,

39:16, 39:17, 40:5, 40:9, 41:24, 44:15, 48:9, 48:13, 49:21, 50:11
**underlied** [1] - 6:7
**underlying** [1] - 5:14
**undertake** [1] - 29:13
**underwrite** [1] - 48:15
**underwriting** [5] - 22:12, 22:20, 44:3, 44:18, 47:24
**underwritten** [1] - 48:1
**undisputed** [2] - 35:16, 37:12
**unfortunate** [3] - 36:6, 48:19, 53:13
**United** [1] - 55:4
**unleash** [1] - 40:15
**unless** [4] - 8:25, 10:13, 21:19, 50:15
**unrefuted** [2] - 35:16, 41:1
**unrelated** [1] - 39:3
**unremitted** [5] - 20:10, 20:17, 20:19, 23:3, 23:6
**unworkable** [1] - 50:13
**up** [11] - 11:3, 13:21, 26:16, 30:2, 30:23, 35:12, 36:10, 36:16, 40:12, 41:2, 43:6
**upheld** [1] - 39:14
**urge** [2] - 16:16, 54:4
**uses** [1] - 38:2
**utilized** [1] - 33:21

## V

**Van** [4] - 8:10, 14:5, 18:15, 39:24
**various** [5] - 12:21, 38:4, 38:5, 38:21, 46:14
**versus** [12] - 4:5, 10:17, 16:9, 20:11, 20:12, 25:8, 25:14, 39:1, 39:21, 39:25, 49:23, 55:7
**viable** [1] - 25:11
**view** [2] - 13:22, 25:12
**Virginia** [2] - 9:21, 39:20
**virtually** [1] - 14:6
**virtue** [1] - 20:19
**vis** [4] - 23:19, 27:14
**vis-a-vis** [2] - 23:19,

27:14
**voluntary** [3] - 6:13, 7:8, 11:22

## W

**warranted** [1] - 5:12
**whatsoever** [1] - 38:3
**whereas** [1] - 36:15
**whereof** [1] - 55:13
**whole** [3] - 12:10, 49:19, 52:8
**wide** [2] - 44:24, 44:25
**wife** [2] - 48:24, 52:19
**Wilkinson** [1] - 38:24
**witness** [1] - 55:13
**word** [1] - 12:21
**workable** [1] - 44:8
**written** [4] - 38:25, 39:6, 39:9, 42:5
**wrote** [1] - 34:10

## Y

**year** [2] - 7:1, 14:17
**years** [2] - 26:10, 27:12
**yourselves** [1] - 4:7

## Z

**Zavareei** [1] - 4:10